UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                              :

UNITED STATES OF AMERICA

                                              :

           -v.-                                   09 Cr. 1120 (PKC)

                                              :

HAN CAVAN,

                                              :

                     Defendant.

                                              :

-------------------------------------------------------------x

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Edward A. Imperatore
Assistant United States Attorney
     -Of Counsel-

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 2

FACTUAL BACKGROUND................................................................................................... 2

DISCUSSION ......................................................................................................................... 8

CONCLUSION........................................................................................................................ 22

## PRELIMINARY STATEMENT

The Government respectfully submits this Memorandum of Law in response to defendant Han Cavan's motion to dismiss the Indictment on the ground that his Sixth Amendment right to a speedy trial was violated.  For the reasons set forth below, Cavan's motion is meritless and should be denied.

## FACTUAL BACKGROUND

### Cavan's Prior Narcotics Conviction

On or about November 20, 2006, Cavan, a Canadian citizen, was sentenced in the United States District Court for the District of Minnesota to 8 years, 8 months, and 8 days in prison for conspiring to distribute approximately 30,000 ecstasy pills, in violation of Title 21, United States Code, Section 846.  At the time of Cavan's conviction in Minnesota, he was residing and had business in the United States.  Cavan began serving his sentence at a prison in the United States. (Exhibit A, Court of Appeal for Ontario Decision, October 2, 2015 (hereinafter "Dec'n"), at 3).

### Cavan's Transfer to Canada and Parole

On May 9, 2008, pursuant to the International Transfer of Offenders Act and accompanying treaty, Cavan was transferred from a United States prison to a Canadian prison on June 26, 2008 to serve the remainder of the sentence imposed in Minnesota federal court.  *Id.* at 3.

If Cavan had served his full sentence in the United States, he would have been released from prison in approximately 2014, assuming that he received "good time" credit.  However, about six weeks after his return to Canada in 2008, Cavan was granted "accelerated day parole" under Canadian law, which permitted Cavan to reside at a Salvation Army residence in Kitchener, Canada while subject to various parole conditions.  *Id.*

2

***Cavan's Cocaine Distribution Conspiracy While on Parole***

As alleged in Indictment 09 Cr .1120 (PKC) (the "Indictment"), during the summer of 2008, Cavan called an individual located in the United States in an effort to purchase multi-kilogram quantities of cocaine  The person whom Cavan called was the brother of a man whom Cavan had met in jail in the United States.  Unknown to Cavan, however, the man was also a paid confidential source (the "CS") who was working with the Drug Enforcement Administration ("DEA").  *Id.* at 3-4.

Cavan's communications and negotiations with the CS progressed into the fall of 2008.  At Cavan's behest, Jo Van Lo, one of Cavan's associates, traveled from Canada to New York to finalize the terms of the transaction: Cavan agreed to purchase 17 kilograms of cocaine from the CS for $27,000 per kilogram.  Cavan further agreed to transport the money – approximately $458,000 in cash – in a secret compartment of a sports utility vehicle in exchange for the cocaine, which was to be transported back to Canada in the same secret compartment of the vehicle.  *Id.* at 4.

Cavan's plan failed.  On or about November 10, 2008, Customs and Border Protection agents stopped the vehicle at the Peace Bridge between Canada and Buffalo, New York.  Agents recovered from the vehicle $458,000 in the hidden compartment.  William Hicks, the driver of the vehicle, was arrested.  *Id.*

***Cavan is Granted Accelerated Full Parole***

On October 2, 2009, the Parole Board of Canada, which, at that time, was unaware of Cavan's cocaine distribution activity while on parole, granted Cavan "accelerated full parole."  Cavan was required to live at a designated address in Kitchener, Canada, and be supervised by a particular Canadian parole office.  *Id.*

3

*Cavan Again Attempts to Purchase Distribution Quantities of Cocaine*

During 2009, while Cavan was on parole in Canada, he continued to call the CS in an effort to obtain multi-kilogram quantities of cocaine.  Cavan ultimately agreed to purchase ten kilograms of cocaine from the CS for $25,000 per kilogram.  In light of the seizure of cash from Hicks in November 2008, Cavan and the CS agreed upon a new plan to exchange the drugs and cash in Tonawanda, New York.  *Id.* at 5.

In Tonawanda, New York, an undercover law enforcement agent gave John Mawhinney, an associate of Cavan, a sample of cocaine.   Mawhinney then produced a duffle bag containing the purchase price plus a transportation fee of $500 per kilogram.  When Mawhinney turned over the money to the CS, DEA agents arrested Mawhinney.  *Id.*

**The Indictment**

On November 19, 2009, two days after Mawhinney was arrested in Tonawanda, New York, a grand jury in the Southern District of New York returned the Indictment against Mawhinney, Adam Kaup (an associate of Mawhinney in Tonawanda), Cavan, Lo, and Hicks, charging each of them with one count of distributing and possessing with intent to distribute cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A).  *Id.*

*Suspension and Revocation of Cavan's Parole*

Within one week of the return of the Indictment, a warrant suspending Cavan's parole was issued based upon the charges contained in the Indictment.  The warrant was executed the next day when Cavan attended a scheduled suspension interview.  In connection with suspension of his parole, Cavan was made aware of the charge contained in the Indictment.  *Id.* at 6.

About two-and-a-half months after Cavan's parole was suspended, the Canadian parole board revoked his parole on two separate grounds: (1) Cavan was involved in the commission of

a new criminal offense and (2) Cavan had breached a specific non-association condition of his parole.  Cavan was remanded to Canadian custody and for a term of imprisonment to end on July 27, 2015.  Significantly, Cavan did not take any steps to review or challenge the suspension or cancellation of his parole.  *Id.*

The only new criminal involvement described in the materials provided to the Canadian parole authorities was the charge contained in the Indictment.  *Id.*

**Proceedings Against Mawhinney and Kaup**

On December 10, 2009, Mawhinney and Kaup were arraigned on the Indictment in the Southern District of New York. On or about February 9, 2010, Mawhinney pled guilty to Count One of the Indictment pursuant to a plea agreement.  On or about February 25, 2010, Kaup pled guilty to Count One of the Indictment pursuant to a plea agreement.

On June 8, 2010, Kaup was sentenced to 70 months' imprisonment, after qualifying for safety valve relief, and three years of supervised release. On or about June 25, 2010, Mawhinney was sentenced to 76 months' imprisonment, after qualifying for safety valve relief, and three years' supervised release.[1]

**The Request to Extradite Cavan**

In view of the heightened standard of proof required for extradition from Canada, the Government attempted to obtain additional evidence in support of the charges prior to seeking the extradition of Cavan, Lo, and Hicks.  Ex. B, Nov. 8, 2013 OIA letter, at 2.  Among other things, the Government debriefed Kaup and Mawhinney, in an unsuccessful effort to obtain their cooperation.  *Id.*

---

[1] All defendants sentenced by the Court in this case have received credit for the time they served in Canadian custody pending extradition.

Once the charges against Mawhinney and Kaup were resolved, on September 13, 2010, an Assistant United States Attorney for the Southern District of New York sent a draft request for the extradition of Cavan, Lo, and Hicks to the Department of Justice, Office of International Affairs ("OIA").  *Id.*  Between September 2010 and November 2011, the AUSA and OIA exchanged numerous drafts of the extradition request in response to questions raised by OIA.   In November 2011, OIA learned that the U.S. Attorney's Office for the Western District of New York was working on an extradition request for Hicks, whose extradition the Southern District of New York was seeking along with Cavan.  Accordingly, OIA decided to hold the Cavan request so that the two related requests could be considered together.  *Id.*

By diplomatic note on September 14, 2012, the United States formally requested the extradition of Cavan, Lo, and Hicks to stand trial on the Indictment in the Southern District of New York.  Ex. A, at 6.

About three months later, on December 13, 2012, counsel with the International Assistance Group issued an "Authority to Proceed" under Section 15 of the Extradition Act.  The Attorney General of Canada was authorized to proceed before the Superior Court of Justice and Seek orders of committal for Cavan, Lo, and Hicks.  *Id.* at 6-7.

***Cavan's Arrest in Canada***

Cavan was arrested on March 1, 2013, about three years after his parole had been revoked and about 28 months before the expiration of his term of imprisonment for his parole violation.  *Id.* at 7.

***Cavan's Challenges the Surrender Proceedings***

On June 7, 2013, a Canadian Superior Court of Justice ordered Cavan's committal for surrender to United States authorities.  Counsel for Cavan subsequently made written

submissions to the Canadian Minister contesting his surrender, arguing, among other things, that he suffered "prejudice . . . by the communication of information about the outstanding charges in the United States to Canadian authorities and . . . the suspension and cancellation of [his] parole and his incarceration to serve the balance of his sentence."  *Id.* at 12.

On December 12, 2013, the Minister ordered Cavan's surrender for extradition to the United States.  The Minister found, among other things, that:

> [Cavan's] submissions are to the effect that the delay [in seeking extradition] caused Mr. Cavan to be re-incarcerated for at least three years as a result of his parole having been suspended and revoked by order of the Parole Board of Canada (PBC).  However, [Cavan] ha[s] not presented any evidence to suggest that the U.S. authorities were involved in the parole suspension or revocation proceedings in Canada, other than to provide information to Canadian officials concerning Mr. Cavan's alleged involvement in cocaine trafficking while on parole.  The U.S. authorities also provided updates at the request of Canadian officials on the status of their extradition request.

> [Cavan's] materials reveal that Mr. Cavan's parole was not only revoked by the PBC because of information suggesting his involvement in drug trafficking but also because he violated a condition of his parole not to associate with a certain individual or individuals.  Moreover, the delay in seeking Mr. Cavan's extradition did not bring about the parole suspension; it was Mr. Cavan's alleged conduct itself.

*Id.* at 10.

The Minister further found, pursuant the Canadian Extradition Act, that Cavan would be imprisoned in Canada until July 25, 2015, his parole violation expiry date, regardless of when the United States requested his extradition.  *Id.* at 30; *see also id.* at 14, 26.

Thereafter, Cavan challenged the Minister's surrender order on several grounds, including that the Minister incorrectly failed to find that extradition would not infringe upon Cavan's personal rights or would be unjust or oppressive under the Extradition Act.  *Id.* at 8.[2]

---

[2] In the interim, both Lo and Hicks were transported to the Southern District of New York and ultimately pled guilty to the Indictment.

On October 5, 2015, the Court of Appeal for Ontario affirmed the Minister's surrender order in all respects by written opinion.  Ex. A, Dec'n.

***Cavan's Extradition***

On or about November 5, 2015, Cavan was transported to the United States and presented in magistrate court in the Southern District of New York.   On November 9, 2015, Cavan was arraigned on the Indictment and appeared for an initial pretrial conference before the Court.

***Cavan's Motion to Dismiss the Indictment***

On or about February 12, 2016, Cavan filed the instant motion to dismiss the indictment on the ground that his Sixth Amendment right to a speedy trial was infringed.

## DISCUSSION

I.       **Applicable Law**

Cavan's motion is governed by the Speedy Trial Clause of the Sixth Amendment, which guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial."  The right to a speedy trial under that Clause attaches when a person becomes an "accused" by "formal indictment . . . or else the actual restraints imposed by arrest and holding to answer to a criminal charge."  *United States* v. *Marion*, 404 U.S. 307, 320 (1971).

As the Supreme Court has noted, "the speedy-trial right is amorphous, slippery, and necessarily relative." *Vermont* v. *Brillon*, 129 S. Ct 1283, 1290. (2009) (internal quotation marks omitted) .  It is "consistent with delays and dependent upon circumstances."  *Id.* (internal quotation marks and brackets omitted).  Thus, the court has "refused to quantify the right into a specified number of days or months or to hinge the right on a defendant's explicit request for a speedy trial."  *Id.* (internal quotation marks and brackets omitted).  Instead, whether the right has

been violated turns on a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.* (internal quotation marks omitted).

In *Barker* v. *Wingo*, 407 U.S. 514 (1972), the Supreme Court identified four factors relevant to a claim under the Speedy Trial Clause: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's demand for a speedy trial; and (4) prejudice to the defendant. *See Barker*, 407 U.S. at 530-32. The *Barker* Court held that these four factors are to be balanced. *See id.* at 530. If, on balance, the defendant's speedy trial right has been violated, the consequence is "the unsatisfactorily severe remedy of dismissal of the indictment." *Id.* at 522.

II.    **Discussion**

In support of his motion, Cavan argues, among other things, that the Indictment caused him to be detained in Canada for a parole violation, the Government delayed in extraditing him from Canada, and he suffered "actual and presumed" prejudice arising from the delay. (Cavan Br. 5-8). Cavan's arguments are meritless and should be rejected.

The purported delay in this case is attributable entirely to Cavan. Cavan was conferred an extraordinary benefit under Canadian law – release on early parole after serving only approximately a year-and-a-half of an eight year and eight month sentence for narcotics distribution imposed in the District of Minnesota. Notwithstanding that benefit, Cavan immediately resumed his drug dealing activities and engaged in the conduct charged in the Indictment while on parole. When Canadian authorities learned of Cavan's conduct, he was sentenced to a term of imprisonment ending in July 2015 for violation of his parole on the grounds that Cavan had committed another criminal offense and associated with known drug dealers. Cavan did not challenge or seek review of the revocation of his parole. He would have served the entirety of that term of imprisonment irrespective of when the United States requested

9

his extradition.  And when Canadian authorities ordered in December 2013 that Cavan be extradited to the United States, he spent nearly the next two years challenging that decision in the hope that he would never stand trial in the Southern District of New York.

In these circumstances, the *Barker* factors weigh decidedly against the relief he seeks in his motion.  First, as described in more detail below, the delay was attributable to Cavan's own conduct and violation of his parole, an offense that is separate and apart from the offense charged in the Indictment.  Second, despite being aware of the charges in the Indictment since 2009, Cavan never once invoked his right to a speedy trial until after he arrived in this Court, and actively fought against his extradition.  Third, there is no prejudice to Cavan in any event. Accordingly, Cavan's motion is meritless and should be denied.

### A.  The Length of the Delay Does Not Favor Cavan

The constitutional right to a speedy trial attaches when a defendant is arrested or indicted, whichever comes first.  Cavan was indicted on these charges on November 19, 2009.  Cavan's speedy trial right therefore attached approximately six years before he was arraigned in this Court on November 10, 2015.

Nevertheless, as Cavan acknowledges, the Government plainly cannot be faulted for any delay during the more than three-year interval September 14, 2012, the date on which the Government submitted its extradition request, and November 10, 2015, the date of Cavan's arraignment.  As described further below, Cavan actively contested his extradition for more than two years, from June 2013 until November 2015, in an effort to avoid standing trial in the United States.

Accordingly, the period pertinent to this motion is the roughly two-year and ten month interval between November 19, 2009, when Cavan was indicted, and September 14, 2012, when

the United States requested Cavan's extradition.[3]

That interval alone, however, does not result in any violation of Cavan's speedy trial rights for two reasons.  First, even longer periods have been found not to violate defendants' speedy trial rights when they nonetheless were reasonable in light of other factors.  *See, e.g.*, *United States* v. *Loud Hawk*, 474 U.S. 302, 315–17 (1986) (7.5 years); *Barker*, 407 U.S. at 533–34 ("well over five years"); *see also Rayborn* v. *Scully*, 858 F.2d 84, 89 (2d Cir. 1988) (more than 7 years).  Courts must consider all relevant circumstances in determining whether a particular delay has been unconstitutional.  *Barker*, 407 U.S. at 521–22 ("[It] is not a violation of the right to a speedy trial unless the circumstances of the case are such that further delay would endanger the values the right protects . . . . [A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case."); *United States* v. *Ewell*, 383 U.S. 116, 119 (1966) ("A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself.").

Second, as described in greater detail below, the purported delay was attributable entirely to Cavan, who was required to serve a term of imprisonment in Canada ending July, 25, 2015 for his parole violation, regardless of when his extradition was requested.

### B.  The Reasons for the Purported Delay Weigh Strongly in the Government's Favor

The second *Barker* factor – the reason for the delay – strongly favors the Government.

---

[3] As reflected on the docket, time was excluded in this case pursuant to the Speedy Trial Act from December 10, 2009 through February 25, 2010, while proceedings against Mawhinney and Kaup were pending.  This period of time therefore is excluded from the analysis.  *See, e.g.*, *United States* v. *Vasquez*, 918 F.2d 329, 337 (2d Cir. 1990) (stating that the Speedy Trial Act "impose[ ] a unitary time clock on all co-defendants joined for trial."); *United States* v. *Ajemian*, 878 F. Supp. 2d 432, 435 (S.D.N.Y. 2012) ("When there is more than one defendant, the Speedy Trial Act imposes 'a unitary time clock on all co-defendants joined for trial,' which begins when the newest defendant is added.") (quoting *Vasquez*, 918 F.2d at 337; and citing *United States* v. *Piteo*, 726 F.2d 50, 52 (2d Cir. 1983) ("[I]n cases involving multiple defendants, [there is] only one speedy trial clock, beginning on the date of the commencement of the speedy trial clock of the most recently added defendant.")).

Here, there is no evidence that the Government ever acted in bad faith to gain a tactical

advantage over or to prejudice Cavan with respect to his defense of the Indictment.  Rather,

Cavan is responsible for the purported delay between his indictment and the Government's

extradition request.  It was Cavan who violated his Canadian parole by conspiring to distribute

cocaine and by associating with known drug traffickers.  It was likewise Cavan who spent

approximately two years contesting his extradition in an effort to avoid trial in the Southern

District of New York.  Pursuant to the Extradition Act, as the Canadian Minister found, Cavan

would not have been extradited to the United States until he completed his term of imprisonment

for the parole violation regardless of when the United States requested his extradition.

Accordingly, there was no urgency in seeking Cavan's extradition.  In these circumstances,

under Second Circuit law, the purported delay was entirely justified.

## 1.  Applicable Law

In *Barker*, the Supreme Court instructed as follows:

> [D]ifferent weights should be assigned to different reasons. A deliberate attempt
> to delay the trial in order to hamper the defense should be weighted heavily
> against the government. A more neutral reason such as negligence or
> overcrowded courts should be weighted less heavily but nevertheless should be
> considered since the ultimate responsibility for such circumstances must rest with
> the government rather than with the defendant.  Finally, a valid reason, such as a
> missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531.

It further emphasized bad faith as a factor in this consideration, stating that "it is

improper for the prosecution intentionally to delay 'to gain some tactical advantage over

[defendants] or to harass them.'"  *Id.* at 531 n. 32 (quoting *United States* v. *Marion*, 404 U.S.

307, 324, (1971)).  "[W]here there is a reasonable explanation for delay," however, "its negative

implications will be vitiated."  *Garcia Montalvo* v. *United States*, 862 F.2d 425, 426 (2d

Cir.1988).

It is well settled under Second Circuit law there are "valid" reasons for pretrial delay, including, among other things, to wait for a prosecution or proceeding in another jurisdiction to conclude.  *Beavers* v. *Haubert*, 198 U.S. 77, 86 (1905); *United States* v. *Jones*, 91 F.3d 5, 8 (2d Cir. 1996) (holding that it was reasonable to delay proceedings in the S.D.N.Y. for 25 months while proceedings in the E.D.N.Y. were pending); *McGrath*, 622 F.2d at 41 (dismissing speedy trial claim when, among other things, one federal trial was delayed in favor of another); *United States* v. *Mejias*, 552 F.2d 435, 443 (2d Cir. 1977) (holding that it was reasonable for the S.D.N.Y. to wait 21 months while a state prosecution was pending, even where the S.D.N.Y. and state prosecutions were based upon substantially the same conduct); *see also. e.g.*, *United States* v. *Thomas*, 55 F. 3d 144, 150-51 (4th Cir. 1995) (holding that the need to conclude a state prosecution was "an obvious reason for delaying [the defendant's] federal prosecution . . . . To do otherwise would be to mire the state and federal systems in innumerable opposing writs, to increase inmate transportation back and forth between the state and federal systems with consequent additional safety risks and administrative costs, and generally to throw parallel federal and state prosecutions into confusion and disarray.").

In the alternative, under Second Circuit law, delay is justifiable in order to persuade a co-defendant or other material witness to testify against the defendant.  *See. e.g.*, *United States* v. *Vassell*, 970 F.2d 1162, 1165 (2d Cir. 1992) (holding that seeking a delay to "encourage a codefendant to testify was a valid" reason under *Barker*); *United States* v. *Baumgarten*, 517 F.2d 1020, 1025 (5th Cir. 1975) ("[W]e agree with the government's contention that its efforts to procure [a key witness's] cooperation constituted a valid reason which, under Barker, 'should serve to justify appropriate delay'"); *see also, e.g.*, *Doggett*, 505 U.S. at 656 ("Our speedy trial

13

standards recognize that pretrial delay is often both inevitable and wholly justifiable. The government may need time to collect witnesses against the accused . . . . We attach great weight to such considerations . . . ."); *accord Barker*, 407 U.S. at 531, 534.

### 2.  Discussion

The purported delay here is valid and attributable entirely to Cavan.  Although Cavan claims that the Government should be faulted for his purported "delay" in waiting to extradite him while he was incarcerated for a parole violation (Cavan Br. 6-7), his claim conflicts with both the facts of his case and the law of this Circuit.  As discussed above, on November 20, 2006, Cavan was sentenced in District of Minnesota to 8 years, 8 months and 8 days in prison for conspiring to distribute approximately narcotics.   On June 26, 2008, Cavan was transferred from a United States prison to a Canadian prison to serve the remainder the sentence imposed in Minnesota federal court.  About six weeks after his return to Canada, Cavan was granted parole. Notwithstanding his early release, which is not afforded under U.S. law, Cavan participated in the cocaine distribution conspiracy and associated with known drug traffickers, both of which were violations of his Canadian parole.  For his parole violations, Cavan was incarcerated in Canada for a term of imprisonment expiring on July 27, 2015.  Significantly, Cavan never sought review of or contested the parole revocation order.   Ex. A, at 3-6.

Under the Canadian Extradition Act, Cavan would have served the entirety of his sentence, until July 27, 2015, for violation of his Canadian parole regardless of when the United States requested his extradition.  *See* Canadian Extradition Act, S.C. 1999, c. 18, section 64 ("Unless the Minister orders otherwise, a surrender order made in respect of a person accused of an offence within Canadian jurisdiction or who is serving a sentence in Canada after a conviction for an offence, other than an offence with respect to the conduct to which the order relates does

14

not take effect until the person has been discharged, whether by acquittal, by expiry of the

sentence or otherwise."); Ex. A at 26 ("The timing of the extradition proceedings would seem of

no consequence to the prisoner's surrender, absent a contrary order by the Minister.").  Applying

the Extradition Act, the Minister properly concluded:

> [A]n earlier extradition request would not have changed the fact that the U.S.
> charges would still have been pending until at least such time as Mr. Cavan was
> surrendered to the United States.  With respect to persons sought serving
> sentences in Canada, I note that section 64 of the Act provides that, unless I order
> otherwise, *a surrender order does not take effect until after the person has been*
> *discharged whether by expiry of the sentence or otherwise*.

Ex. A, at 30 (emphasis added).  On appeal of the Minister's decision, the Canadian Court of

Appeal likewise observed that "the delay in instituting extradition proceedings had no impact on

the period [Cavan] would spend in custody.  Once parole had been revoked, subject to his right

to re-apply or review the revocation decision, [Cavan] would remain in custody until his warrant

expiry date with or without any extradition proceedings."  Ex. A, Dec'n at 14.  Thus, there is no

merit to Cavan's claim that his incarceration in Canada would not have been so lengthy if "the

Government made a diligent, good-faith efforts [sic] to extradite Mr. Cavan earlier" (Cavan Br.

7).  At bottom, Cavan's own actions were the cause of the predicament he complains of today.

He would have remained in Canadian custody until July 2015 no matter when the United States

requested his extradition.  Accordingly, under Second Circuit law, the reasons for the delay

weigh strongly in the Government's favor.  *See, e.g.*, *Jones*, 91 F.3d at 8; *Mejias*, 552 F.2d at

443.

> To the extent Cavan claims that he was incarcerated in Canada simply because he was

indicted in the Southern District of New York, his argument likewise fails.  There can be no

serious dispute that Cavan's violation of his parole is an offense entirely separate from the

offense charged in the Indictment.[4]  In fact, Cavan's parole violation was based not only upon his

engaging in the narcotics conspiracy charged in the Indictment, but also his associating with

known drug dealers.  As the Canadian Court of Appeal found:

> [Cavan's] submissions are to the effect that the delay [in seeking extradition] caused Mr. Cavan to be re-incarcerated for at least three years as a result of his parole having been suspended and revoked by order of the Parole Board of Canada (PBC).  However, [Cavan] ha[s] not presented any evidence to suggest that the U.S. authorities were involved in the parole suspension or revocation proceedings in Canada, other than to provide information to Canadian officials concerning Mr. Cavan's alleged involvement in cocaine trafficking while on parole.  The U.S. authorities also provided updates at the request of Canadian officials on the status of their extradition request.
>
> [Cavan's] materials reveal that Mr. Cavan's parole was not only revoked by the PBC because of information suggesting his involvement in drug trafficking but also because he violated a condition of his parole not to associate with a certain individual or individuals.  Moreover, the delay in seeking Mr. Cavan's extradition did not bring about the parole suspension; it was Mr. Cavan's alleged conduct itself.

*Id.* at 10.  The Canadian Court of Appeal further observed that the Canadian Parole Board

"exercises an inquisitorial function. It can rely on a wide variety of information from domestic

and foreign sources to carry out its mandate [including] information indicative of a return to

criminal activity whether charged, proven, stayed, withdrawn or dismissed.  The extradition

partner has no status before the [Parole] Board.  [Cavan] had the right to appeal or judicially

review the Board's decision but chose not to do so."  *Id.* at 25; *see also id.* at 27 ("[T]he fact that

the extradition proceedings were outstanding formed no part of the decision of the [Parole

---

[4] Violation of parole or supervised release is a separate offense from the offense underlying the violation.  *See, e.g.*, U.S.S.G. § 7B1.3(f) (stating that sentence for supervised release violation "shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation"); *see also United States* v. *Melendez*, 422 F. App'x 4, at *1 (2d Cir. 2011) ("A consecutive sentence is appropriate because a sentence for violation of supervised release is "not intended to be a sanction for [the defendant's] conduct, but rather for the 'breach of trust' committed against the District Court.") citing (*United States* v. *Sweeney*, 90 F.3d 55, 57 (2d Cir.1996)).

Board] to suspend and later revoke [Cavan's] parole.").  At bottom, as the Court of Appeal concluded, "[i]t was [Cavan's] own conduct that compromised his conditional liberty, not the fact of extradition proceedings or any delay in initiating them."  *Id.* at 28.

In these circumstances, the Government acted in an entirely reasonable manner.  Cavan was incarcerated in Canada because Canadian authorities determined that he violated the conditions of release for the transferred sentence.  There was no urgency to seeking extradition because Cavan was required to serve the entirety of his sentence in Canada before he could be extradited to the United States.  As Cavan acknowledges, the Government did not intentionally delay extradition in order to gain a tactical advantage over Cavan or prejudice him. Nevertheless, in view of the heightened standard of proof required for extradition from Canada, the Government attempted to obtain additional evidence in support of the charges prior to seeking the extradition of Cavan, Lo, and Hicks.  *See* Ex. B, Nov. 8, 2013 OIA letter, at 2.  In an effort to buttress the extradition request, the Government, among other things, sought Mawhinney's and Kaup's cooperation, albeit unsuccessfully.  The process of debriefing Kaup and Mawhinney delayed the extradition request submission because the Government was hopeful that either Kaup or Mawhinney would cooperate and that information obtained from them could be included in the extradition request.  *Id.*  Thus, even putting aside that Cavan would have been incarcerated in Canada until July 2015 regardless of when his extradition was sought, any delay to meet with co-conspirators and potential witnesses against Cavan serves as an independent basis to justify any delay in extraditing Cavan.  *See, e.g.*, *Vassell*, 970 F.2d at 1165.

Finally, as noted above, once the United States formally submitted its extradition request to Canada in September 2012 and the Minister ordered Cavan's surrender in June 2013, Cavan

actively contested his extradition.  Cavan is therefore squarely to blame for the delay following the Minister's July 2013 surrender order.

Accordingly, the delay during the period from Indictment until Cavan's extradition is attributable entirely to Cavan.

### C.  Cavan's Failure to Assert His Right in a Timely Manner Weighs Strongly Against Him

Cavan seeks to brush aside the third *Barker* factor, arguing that it is "neutral." (Def. Br. at 6).  But Cavan's failure to assert his right in a timely fashion weighs strongly against him.  In his sworn declaration, Cavan concedes that he was aware of the Indictment as of November 26, 2009, when he was arrested for violating his parole.  (Cavan Decl. ¶¶ 11-12).  Cavan did not assert his right to a speedy trial until he filed the instant motion in February 2016, more than six years after he in fact knew about the charges pending against him.  *See Doggett*, 505 U.S. at 653 ("Were [it] true [that the defendant knew of his indictment years before his arrest], *Barker*'s third factor, concerning invocation of the right to a speedy trial, would be weighed heavily against him.").  *See also Blanco*, 861 F.2d at 780 ("Since the bulk of the delay of which Blanco is complaining occurred between her indictment in 1975 and her arrest in 1985, and she only asserted her claim after her arrest, this factor does not help her case.") (citation omitted).

Moreover, as described above, the Canadian Superior Court of Justice ordered Cavan's committal for surrender to United States authorities on June 7, 2013.  Thereafter, for more than two years, Cavan actively contested his extradition, arguing, among other things, that the charges in the Southern District of New York caused him to be incarcerated for a parole violation.  Thus, while fully aware of the Indictment, Cavan asked Canadian authorities to refuse the extradition request so that he would not face charges in this District.

18

Accordingly, the circumstances of this case, including Cavan's own admissions and conduct, make clear "that he had no serious interest in the speedy prosecution of the charges against him." *Rayborn*, 858 F.2d at 92 (citation omitted).   Accordingly, under Second Circuit law, this factor weighs strongly against Cavan.

### D.  Cavan Suffered No Prejudice

Finally, Cavan claims that he "suffered actual and presumed prejudice" resulting from the time that elapsed between his indictment and the Government's extradition request.  (Cavan Br. 9).  His arguments are meritless.

With respect to "actual prejudice," Cavan argues that "[b]ecause of the nearly three-year delay preceding the extradition request, Mr. Cavan's memory of the [phone] calls, communications, the circumstances under which they occurred, the parties who participated in them, and their precise subjects, has eroded to a large degree."  (Cavan Br. 9).   His argument is specious.  Here, the principal evidence against Cavan consists of numerous recorded telephone calls exchanged by Cavan and his co-conspirators with confidential informants and telephone records.  To the extent Cavan claims that other meetings or phone conversations were unrecorded, the passage of time tends to be prejudicial to the Government and advantageous to Cavan.  As courts have recognized, "delay is a two-edged sword.  It is the Government that bears the burden of proving its case beyond a reasonable doubt.  The passage of time may make it difficult or impossible for the Government to carry its burden."  *United States* v. *Loud Hawk*, 474 U.S. 302, 315 (1986); *see also Barker*, 407 U.S. at 521 (observing that "deprivation of the right may work to the accused's advantage").

In any event, as Judge Kaplan recently observed in denying a speedy trial motion:

[A]s in so many other legal contexts, relief is appropriate only if there is a causal relationship between the claimed injury and the conduct complained of—in this

19

context, a causal connection between the particular alleged prejudice and the
delay in question.  For example, a defendant who already is serving a long
sentence for a conviction on Charge A when he is charged with a different crime,
Charge B, will not be heard to complain, for speedy trial purposes, of the fact that
he was in jail for a long time between the indictment on Charge B and the trial on
that charge. The defendant would have been in jail on Charge A anyway, so that
incarceration would not implicate his right to a speedy trial on Charge B.

*United States* v. *Ghailani*, 751 F. Supp. 2d 515, 531 (S.D.N.Y. 2010) (internal citations omitted).

The same is true here.  As discussed above and in the Canadian Court of Appeal decision
affirming Cavan's surrender order, the delay was attributable to Cavan.   Cavan (1) violated the
terms of his early parole for distributing narcotics and associating with known drug dealers, (2)
was sentenced to a term of imprisonment for the parole violation ending in July 2015, (3) never
challenged or sought review of the parole revocation determination, and (4) did not invoke his
right to a speedy trial until after he arrived in this Court.  As the Canadian court concluded,
"[o]nce parole had been revoked, subject to his right to re-apply or review the revocation
decision, [Cavan] would remain in custody until his [July 2015] warrant expiry date with or
without any extradition proceedings."  Ex. A, Dec'n at 14.

Thus, there is no "causal connection between the particular alleged prejudice and the
delay in question," because Cavan would have been incarcerated in Canada until July 2015
regardless of when the United States requested his extradition.  Ex. A, at 30; *Ghailani*, 751 F.
Supp. at 531; *see, e.g.*, *United States* v. *Lainez–Leiva*, 129 F.3d 89, 92 (2d Cir. 1997) ("Nor can
Lainez–Leiva claim prejudice traceable to any oppressive pretrial incarceration, because he
would have been serving his state sentence in any event.").  In any event, if Cavan wanted to
avoid any prejudice to his defense that might result from the passage of time, he had the
opportunity to make himself available for trial once the Canadian Minister ordered his surrender.
Not only did he choose not to do so, but he spent more than two years – from the Canadian

surrender decision in June 2013 until his committal order in November 2015 – trying

unsuccessfully to persuade Canadian courts not to extradite him to the United States.  At bottom,

there is no evidence that the delay in this prosecution has impaired Cavan's ability to defend

himself in any respect or prejudiced him in any other way.

Finally, Cavan's contention that prejudice is "presumed" is meritless.  "While a

particularized showing of prejudice is not a prerequisite to finding for a defendant under *Barker*,

evidence of actual prejudice is quite important unless the other factors weigh heavily against the

government."  *Ghailani*, 751 F. Supp. 2d at 541; *see Rayborn* v. *Scully*, 858 F.2d 84, 94 (2d Cir.

1988) (citing *United States* v. *Mitchell*, 769 F.2d 1544, 1547 (11th Cir.1985), for the proposition

that a defendant must show actual prejudice unless the other three factors weigh heavily against

the government).  The authority Cavan relies upon to support his argument that this Court should

"presume" he has been prejudiced does not help his case.  In *Doggett*, for example, the Supreme

Court found prejudice, but the Court also made clear that prejudice would not necessarily be

presumed where it was "extenuated, as by the defendant's acquiescence" or otherwise rebutted

by the Government.  *Id.* at 658; *see also Barker*, (refusing to grant relief where prejudice was

minimal, in that "there is no claim that any of [the defendant's witnesses died or otherwise

became unavailable owing to the delay," and "more important . . . is the fact that [the defendant]

did not want a speedy trial").  Thus, it is not appropriate to presume any prejudice in this case.

## <u>CONCLUSION</u>

As set forth herein, Cavan's motion should be denied.

Dated:      New York, New York
             March 4, 2016

                                    Respectfully submitted,

                                    PREET BHARARA
                                    United States Attorney
                                    Southern District of New York

By: <u>/s/ *Edward A. Imperatore*</u>
                    Edward A. Imperatore
                    Assistant United States Attorney
                    Southern District of New York
                    (212) 637- 2327