UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

                                                09 Cr. 1120 (PKC)

   -against-

HAN CAVAN,

                Defendant.
-------------------------------------------------------x


## DEFENDANT'S MEMORANDUM IN REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE INDICTMENT


                                                                        ARNOLD J. LEVINE
                                                                        *Attorney for Han Cavan*
                                                                        233 Broadway, Suite 901
                                                                        New York, N.Y.  10279

**HAN CAVAN'S SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL WAS VIOLATED BY THE GOVERNMENT'S EXCESSIVE DELAY IN SEEKING MR. CAVAN'S EXTRADITION FROM CANADA.**

The defendant, Han Cavan, respectfully requests this Court grant his Motion to Dismiss the Indictment on the ground that his right to a Speedy Trial under the Sixth Amendment to the United States Constitution was violated by the Government's excessive delay in seeking Mr. Cavan's extradition from Canada.

The Government makes various claims in its Memorandum of Law in Opposition that have no basis in fact, for which it provides no authority, or are that flatly contradicted by the record, including the exhibits previously submitted in support of the defendant's motion to dismiss. For example, at least twice in its Memorandum of Law in Opposition, the Government claims that there is a "heightened standard of proof required for extradition from Canada." See Gov't Mem at 5, 17. The Government, however, has provided no authority whatever for this proposition. Rather, the Government seems simply to parrot what another DOJ attorney stated in her November 8, 2013, letter to the International Assistance Group in Ontario, Canada. See Gov't Ex. B. Notably, that letter also cites no authority for the proposition that there is a "heightened standard of proof required for extradition from Canada." Significantly, the Government's Exhibit B was drafted in response to an inquiry by the Minister of Justice after Mr. Cavan opposed extradition, in part, on the ground that the U.S. had unjustifiably and prejudicially delayed for three years its request for extradition. See Def. Ex. 7 at 5. So, the claims in that letter should be taken with the proverbial grain of salt, given the author's motive at that point to invent a legitimate reason for the delay. Indeed, this claim of a "heightened standard" begs the question "heightened as compared to what?"

Neither the extradition treaty itself nor Canada's Extradition Act contains any provision requiring a heightened standard of proof. In fact, the standards for charging and convicting in Canada appear to mirror those in the United States. <u>Compare</u> www.justice.gc.ca (Website for Canadian Department of Justice) and Canadian Extradition Act at http://laws-lois.justice.gc.ca <u>with</u> Treaty on Extradition Between the Government of Canada and the Government of the United States of America at Article 10 signed December 3, 1971. Thus, the Government's attempt to justify the delay in seeking Mr. Cavan's extradition, on the ground of this "heightened standard of proof" falls flat. Indeed, it is more likely that the Government was simply using the delay to shore up its case for its own prosecutorial purposes rather than to satisfy some imaginary standard placed on it by Canada. That is, the Government purposely delayed seeking Mr. Cavan's extradition to gain an advantage over Mr. Cavan who could have no contact with Mawhinney or Kaup while he remained incarcerated in Canada instead of being housed with his co-defendant's in New York. In the end, even without the additional proof in the form of cooperation by Mr. Cavan's co-defendant's, the Government's extradition request practically sailed through the Canadian process once it was finally made.

Second, the Government repeatedly argues that Mr. Cavan is responsible for the "entire" six-year delay between the filing of the indictment in 2009 and his eventual arrival in the United States in 2015. By limiting his argument in his Motion to Dismiss, and in his Memorandum of Law in support thereof, to the three-year period between the date of his indictment and the date the Government finally requested his extradition, Mr. Cavan has effectively conceded that he bears more responsibility than the Government for the delay following the Government's formal extradition request in 2012. However, the argument that Mr. Cavan, and not the Government, is entirely to

blame for the Government's three-year delay in formally requesting his extradition in the first place borders on frivolous. In fact, the blame for that three-year delay rests entirely on the Government. It was the Government that presented evidence to a Grand Jury in secret, obtained an indictment, and filed that indictment. It was the Government alone that notified Canadian authorities of the instant indictment. See Def. Ex. 7 at 5 (Minister's Decision). What's more, it cannot seriously be disputed that the Government's purpose in notifying Canadian authorities of the indictment and the identity of his co-defendants was to have Mr. Cavan re-incarcerated in Canada for violating the conditions of his parole there. Mr. Cavan, on the other hand, took no steps whatsoever to prevent or otherwise delay the United States from seeking his extradition between the filing of the indictment in 2009 and the formal request finally made three years later in September 2012. Contrary to the Government's claims, therefore, the Government, not Mr. Cavan, bears sole responsibility for that three-year delay. Furthermore, as demonstrated in Mr. Cavan's Memorandum of Law in Support of his Motion to Dismiss, that three-year delay, together, with the presumed prejudice flowing therefrom, is by itself sufficient to establish a violation of the Speedy Trial guarantee in the Sixth Amendment.

Third, the Government repeatedly mischaracterizes Mr. Cavan's release eligibility, Canadian Law, and the authority of the Minister of Justice to order the surrender of a sentenced prisoner before the expiration of the sentence. For example, the Government continuously states unequivocally that Mr. Cavan was bound to remain incarcerated in Canada until July 25, 2015, the expiration date of the previously imposed U.S. sentence, as calculated by Canadian authorities. See Gov't Mem. at 7, 11, 14, 15. The November 8, 2013, letter from DOJ's Office of International Affairs, however, acknowledges that Mr. Cavan, in fact, was eligible to be released in September 2013. See Gov't Ex. B at 2; Def. Ex. 7 at 6 (Letter from Minister of Justice to John Norris, Barrister). Furthermore, as

the Minister of Justice made clear in his letter to Mr. Cavan's attorney, John Norris, the Minister of Justice had the authority to Order that Mr. Cavan be surrendered to the United States before the expiration of Mr. Cavan's previously imposed U.S. sentence[1]. See Def. Ex. 7 at 6. Moreover, while the Minister stated in that letter that "it is not apparent that an earlier request for extradition would have resulted in Mr. Cavan's earlier release from custody in relation to the sentence he is currently serving in Canada," contrary to claims by the Government, he certainly did not state that the earlier release was out of the question or that an earlier request would have been futile.

In fact, all things considered, it is likely that an earlier request would have resulted in an earlier determination and an earlier extradition. This is so for several reasons. First, the Minister of Justice determined that the interests of the United States in prosecuting Mr. Cavan for the crimes in the instant indictment were superior to Canada's interests in prosecuting Mr. Cavan for any crimes arising out of the same conduct. See Def. Ex. 7 at 8. Second, the sentence Mr. Cavan was serving in Canada was imposed by a United States District Court for violating the laws of the United States in the United States.[2] Mr. Cavan was serving his U.S.-imposed sentence in Canada because he

---

[1] Under the Canadian Extradition Act, s. 7, "[t]he Minister is responsible for the implementation of extradition agreements, the administration of this Act and dealing with requests for extradition made under them." See Extradition Act (Consolidated), found at http://laws-lois.justice.gc.ca.

[2] Although the Government asserts that "[w]hen Canadian authorities learned of Cavan's conduct, he was sentenced to a term of imprisonment ending in July 2015 for a violation of his parole," See Gov't mem. at 9, the Government apparently labors under the mistaken impression that all criminal justice systems mirror the U.S. federal criminal system, where defendants are "sentenced" for violations of Supervised Release after serving the prison portion of their sentence, see Gov't Mem. at 16 n.4. In fact, Mr. Cavan was paroled, not placed on Supervised Release, by Canadian authorities. Similarly, unavailing is the Government's assertion that the parole violation constituted "an offense that is separate and apart from the offense charged in the indictment." See Gov't Mem. at 10, 15. Mr. Cavan was never charged with an offense in Canada based either on the conduct in the indictment or on his association with other criminals,

requested to serve his sentence there pursuant to a treaty between the U.S. and Canada for the transfer of sentenced prisoners, not because Canada had some overriding interest in seeing Mr. Cavan punished. Indeed, Mr. Cavan was originally paroled shortly after arriving in Canada and years before he would have been eligible for release had he continued serving his sentence in the United States. Thus, Canada's interest in seeing Mr. Cavan punished to the full extent possible surely was inferior to the interests of the United States. That is, it is unlikely that the Minister of Justice would have stood in the way if the United States had requested Mr. Cavan's early release from his U.S.-imposed sentence for a crime committed against the United States in the United States so that it could prosecute him for new, more serious, crimes committed against the United States. As noted above, the Minister of Justice, in fact, did conclude that the U.S. had an interest superior to Canada's in prosecuting Mr. Cavan for that new crime.

Aside from these baseless claims and mischaracterizations, the Government's attempt at justifying the delay does little more than actually prove that the Government moved at a snail's pace and even made calculated decisions to delay requesting Canada to surrender Mr. Cavan. For example, although Mr. Cavan was indicted in early November 2009, the Government failed even to begin preparing a request for his extradition until nearly a year later, in September 2010. The

---

including his co-defendants. Thus, Mr. Cavan was not "sentenced" by Canadian authorities for violating parole or even for a "new offense." Rather, Mr. Cavan was simply re-incarcerated as a direct result of the conduct charged in the indictment to serve out the remainder of the previously imposed U.S. sentence because he violated the conditions of his early release. The Government's reliance on cases in which new sentences were imposed for violations of Supervised Release, see Gov't Mem. at 16 n.4, therefore, is entirely misplaced. This is an important distinction because the fact is that at no time relevant in the slightest to this motion was Mr. Cavan ever serving a Canadian-imposed sentence. Instead, his incarceration in Canada was at all times in satisfaction of the sentence imposed by the United States District Court for the District of Minnesota.

Government fails to explain satisfactorily why it could not start preparing a request for Mr. Cavan's extradition concurrently with its attempts to "flip" his co-defendants Mawhinney and Kaup, who were on the same indictment.  Similarly, the Government fails to explain why it took fourteen months between September 2010 and November 2011 to exchange "numerous" drafts of the extradition request between the U.S. Attorney's Office and the Office of International Affairs, both of which are within the Department of Justice.  Even then, the Department of Justice, acting through the Office of International Affairs, made a calculated decision not to seek Mr. Cavan's extradition so that the extradition requests for Mr. Cavan and co-defendant Hicks could be considered together.  No satisfactory explanation is provided for that decision, either, even assuming that decision actually was made in the first place.

The Government also mistakenly argues, albeit in a footnote, that the period from December 10, 2009, to February 25, 2010, should "excluded from the analysis."  See Gov't Mem. at 11 n.3.  Accepting the Government's argument on this point would require the Court to engage in the proverbial mixing of apples and oranges.  See, e.g., 18 U.S.C. § 3173 (stating that "[n]o provision of [the Speedy Trial Act] shall be interpreted as a bar to any claim of denial of speedy trial required by amendment VI of the Constitution").  The Government relies for this proposition on the Speedy Trial Act and cases interpreting and applying the Speedy Trial Act, not the Sixth Amendment's Speedy Trial Clause.  One need only read the Speedy Trial Act and the cases cited by the Government to see that they are not congruent with the Speedy Trial Clause and the cases interpreting and applying it.  So, while there may be a "unitary time clock" that begins only after the the action against the last-added defendant has commenced, as that term itself is defined under the Speedy Trial Act, that clearly is not the case under the Constitutional Speedy Trial Clause.

That is, whereas the clock starts for purposes of the Speedy Trial Act only after "the filing date (and making public) of the information or indictment, or [ ] the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs," See 18 U.S.C. § 3161(c)(1), the clock starts for purposes of the Sixth Amendment's Speedy Trial Clause on the date of the filing of the accusatory instrument, without regard to when the defendant is brought before judicial officer, see, e.g., Doggett v. United States, 505 U.S. 647, 652 (measuring delay from the date of indictment even though the defendant was not arrested until more than eight years later); id. at 655 (noting that constitutional right to speedy trial is "triggered by arrest, indictment, or other official accusation"), or whether it is made public, see United States v. Leaver, 358 F. Supp. 2d 255, 266-68 (S.D.N.Y. 2004) (holding that Sixth Amendment Speedy Trial right was triggered by filing of sealed indictment).

Moreover, the Speedy Trial Act and the Speedy Trial Clause do not protect the same interests. While the Speedy Trial Clause in the Sixth Amendment is a "right' afforded the defendant, the Speedy Trial Act targets the "'societal interest in prompt dispositions.'" Zedner v. United States, 547 U.S. 489, 501 (2006) (quoting S. Rep. No. 96-212, p. 29). Thus, the statutory exclusions under the Speedy trial Act have limited value in the constitutional speedy trial context. The docket entry as to Mawhinney and Kaup, who had already been arrested, were already in the Government's custody, and were providing information to the Government for their own benefit (each was able to avoid the mandatory ten-year minimum by proffering and thereby obtaining Safety Valve relief) has no bearing whatsoever on Mr. Cavan's Motion to Dismiss on Constitutional, as opposed to statutory, grounds. Contrary to the Government's assertion, therefore, the period from December 10, 2009, to February 25, 2010, is not at all excluded from the analysis and, in fact, weighs against the

7

Government.

In addition, contrary to the Government's argument, Mr. Cavan has never acknowledged that "the Government did not intentionally delay extradition in order to gain a tactical advantage over Cavan or to prejudice him." See Gov't Mem. at 17. Not surprisingly, the Government fails to cite any page in Mr. Cavan's Motion to Dismiss or Memorandum of Law to support this proposition. The fact of the matter is that before receiving the Government's Memorandum in Opposition and the letter from the Office of International Affairs, Mr. Cavan had no idea whether the delay was attributable only to the Government's negligence or to a desire to gain a tactical advantage over Mr. Cavan. The Government's Memorandum in Opposition, together with the letter from the Office of International Affairs, makes it abundantly clear that, in fact, the delay was a calculated decision made with the purpose of gaining a tactical advantage. The Government purposely delayed Mr. Cavan's extradition so that it could try to "flip" at least two of his co-defendants against him, while at the same time ensuring that Mr. Cavan was hundreds of miles from those co-defendants and, therefore unable to engage them. The delay also had the effect of ensuring that Mr. Cavan would not yet be appointed counsel in the instant matter who could undertake an investigation, including speaking to the attorneys for Mawhinney and Kaup and even trying to get permission to speak to them directly. It could not be more clear that the Government purposely delayed requesting Mr. Cavan's extradition, at least in part, out of a desire to gain a tactical advantage over Mr. Cavan and to prejudice him.

Finally, the Government's reliance on Rayborn v. Scully, 858 F.2d 84, 94 (2d Cir. 1988), and United States v. Mitchell, 769 F.2d 1544, 1547 (11th Cir. 1985), for the proposition that "evidence of actual prejudice is quite important unless the other factors weigh heavily against the government"

is misplaced and demonstrates a desire to ignore Supreme Court precedent unfavorable to the Government. Indeed, while the Government places the greatest emphasis on prejudice, which is the fourth factor, apparently giving it precisely the talismanic significance the Supreme Court has expressly rejected, the Supreme Court, a year after the eleventh Circuit's decision in Mitchell, explained that "[t]he flag all litigants seek to capture is the second factor, the reason for the delay." United States v. Loud Hawk, 474 U.S. 302, 315 (1986). The Supreme Court, in fact, has repeatedly rejected arguments by the state and federal governments that actual prejudice is necessary to a finding of a speedy trial violation. See Doggett v. United States, 505 U.S. 647, 655 (1992); Moore v. Arizona, 414 U.S. 25, 26 (1973); Barker v. Wingo, 407 U.S. 514, 533 (1972). In Doggett, which was decided six years after the Second Circuit's decision in Rayborn and seven years after the Eleventh Circuit's decision in Mitchell, the Supreme Court put the Government's argument to rest. See Doggett, 505 U.S. at 654-58.

Furthermore, the Government's argument rests on the assumption that each of the first three factors weighs heavily in favor of the Government. As demonstrated above, as well as in Mr. Cavan's Memorandum of Law in Support of his Motion to Dismiss, the Government's assumption is stands on shaky ground, as Mr. Cavan has demonstrated that the "the flag all litigants seek to capture" – the second factor – rests squarely in his camp, as the Government bears sole responsibility for the three-year delay between Mr. Cavan's indictment and the Government's formal request for his extradition. The first factor also weighs heavily in favor of Mr. Cavan in two ways, in that the three-year delay clearly "has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay" and because that delay is three times as long as "the bare minimum needed to trigger judicial examination of the claim." Doggett, 505 U.S. at 651-52. The decisions in Rayborn and Mitchell,

9

even if somehow still viable after <u>Doggett</u>, are no help to the Government here.

## **CONCLUSION**

For these reasons, as well as those in Mr. Cavan's Memorandum of Law in Support of his Motion to Dismiss, this Court should conclude that Mr. Cavan's Sixth Amendment right to a Speedy Trial has been violated and that the indictment, consequently, must be dismissed.

Respectfully submitted,

/s/ Arnold J. Levine
Arnold J. Levine (AL6819)
*Attorney for Han Cavan*
233 Broadway, Suite 901
New York, N.Y.  10279
212-732-5800
NYCcrimlaw@aol.com