UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                          09-cr-1120 (PKC)

               -against-                          MEMORANDUM
                                                  AND ORDER

HAN CAVAN,

                         Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

          On November 19, 2009, an indictment was filed against defendant Han Cavan for
conspiracy to violate the narcotics laws of the United States.  At the time, Cavan was on
"accelerated day parole" from a prison sentence he was serving in Canada.  On September 14,
2012, approximately 34 months later, the government requested that Cavan be extradited from
Canada to the United States.  Cavan now moves to dismiss the indictment on the ground that the
delay violated his Sixth Amendment right to a speedy trial.  For the following reasons, defendant's
motion to dismiss is denied.

BACKGROUND

          On November 20, 2006, Cavan, a citizen of Canada, was sentenced in the United
States District Court, District of Minnesota to 117 months' imprisonment for criminal possession
with intent to distribute narcotics in violation of 21 U.S.C. § 841.  (Levine Decl. ¶¶ 6-7.)  Prior to
the completion of his sentence, Cavan was transferred to a Canadian prison on June 26, 2008
pursuant to the International Transfer of Offenders Act and accompanying treaty.  (Id. ¶ 8.)
Approximately six weeks after Cavan was transferred to Canada, he was granted "accelerated

day parole" under Canadian law, and on October 2, 2009, he was granted "accelerated full parole." (Id. ¶¶ 9, 11.)

The indictment pending before this Court alleges that Cavan conspired with associates to purchase cocaine. (Indictment ¶ 4(a)-(b).) The plan to make the purchase failed, leading to the arrest of William Hicks. In 2009, while released on "accelerated full parole," the government alleges that Cavan again conspired to purchase cocaine. (Indictment ¶ 4(c)-(e).) This plan also failed, leading to the arrest of John Mawhinney.

As noted, on November 19, 2009, a grand jury in this district returned an indictment against Cavan and four others, including Hicks and Mawhinney, charging them with conspiring to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841, 846. (Levine Decl. ¶¶ 13-14.) Shortly after the indictment, Cavan's Canadian parole was suspended and he returned to prison in Canada. Canadian authorities suspended his parole on the grounds that he (1) was involved in the commission of a new criminal offense, and (2) had breached a condition of his parole by associating with individuals with whom he was not supposed to associate. (Decision of Minister Peter MacKay, dated Dec. 12, 2013 ("Surrender Decision"), Dkt. No. 72-1, at 5-6.) Once returned to prison, Cavan was not eligible for "statutory release" until September 5, 2013, and his sentence did not expire until July 27, 2015. (Id. at 6.)

On December 10, 2009, two of Cavan's codefendants, Mawhinney and Adam Kaup, were arraigned in this district before Magistrate Judge Peck. (09 cr 1120 (PKC) (Dec. 10, 2009 Minute Entry).) Mawhinney pled guilty on February 9, 2010 and was sentenced on June 25, 2010. Kaup pled guilty on February 25, 2010, and was sentenced on June 8, 2010. Prior to sentencing, the government attempted to acquire information from Mawhinney and Kaup in the hope that "at least one of the defendants would cooperate against Cavan . . . and that the

2

information obtained from either of the defendants could be included in [Cavan's] extradition request."  (Office of International Affairs Letter to Raphael Ali Jean-Pierre, International Assistance Group, dated Nov. 8, 2013 ("OIA Letter"), Gov't Ex. B at 2.)  However, Cavan's codefendants refused to cooperate with the government and did not provide any additional information.  (Id.)

Following the sentencings of Mawhinney and Kaup, on September 13, 2010, an Assistant U.S. Attorney ("AUSA") in this district sent a draft request for extradition of Cavan to the U.S. Department of Justice, Office of International Affairs ("OIA").  (OIA Letter at 2.)  The request sought extradition of Cavan and his two remaining codefendants, Jo Van Lo and Hicks. (Id.)  The AUSA and the OIA continued to exchange drafts of the extradition request between September 2010 and November 2011.  (Id., at 2-3.)  In that time, the AUSA and OIA "tried to determine whether the Canadian conviction was based on the same conduct that comprised the U.S. charges, which took some time, as did perfecting the identification portion of the request." (Id.)  In November 2011, the OIA discovered that the U.S. Attorney's Office for the Western District of New York was separately working on an extradition request for Hicks.  (Id. at 3.)  The OIA decided to "hold the Cavan request so the two related requests could be considered together."  (Id.)

On September 14, 2012, the United States formally requested that Canada extradite Cavan along with his two codefendants, Lo and Hicks, to the United States. (Diplomatic Note, Levine Decl. Ex. F.)  On December 13, 2012, counsel for the Canadian International Assistance Group issued an Authority to Proceed ("ATP") under Section 15 of the Extradition Act.  (Decision of the Court of Appeals for Ontario, dated Oct. 2, 2015 ("CoA Decision"), Government Ex. A, at 6.)  The ATP authorized the Attorney General of Canada "to

proceed before the Superior Court of Justice and seek orders of committal for Cavan, Lo and Hicks." (Id. at 6-7.) On March 1, 2013, Cavan was formally arrested on the charges, and on June 7, 2013, the Canadian Superior Court ordered his committal for surrender to U.S. authorities. (Id. at 7.)

On August 30, 2013 and December 4, 2013, Cavan made submissions to the Minister of Justice, the Honorable Peter MacKay, contending that he should not be surrendered to U.S. authorities and that he should be discharged from the extradition proceedings. (Surrender Decision at 2.) On December 12, 2013, Minister MacKay denied Cavan's request and ordered his surrender for extradition to the United States. (Id. at 3.) Cavan sought judicial review of the Minister's decision under Section 57(1) of the Extradition Act. (CoA Decision at 8.) On October 2, 2015, the Court of Appeal for Ontario affirmed the Minister's order of surrender. On November 5, 2015, Cavan was transported to the United States, and on November 9, 2015, he was arraigned in this district on the indictment. (09 cr 1120 (PKC) (Nov. 9, 2015 Minute Entry).)

Cavan moved to dismiss the indictment. (Dkt. No. 63.) The parties appeared before this Court to be heard on the motion, and the Court gave the parties an opportunity to submit supplemental briefings. (April 22, 2016 Hearing Tr. 26.) Cavan requested multiple extensions to file supplemental briefings (Dkt. No. 75, 77.) On July 8, 2016, the parties appeared for further argument on the motion. (09 cr 1120 (PKC) (July 8, 2016 Minute Entry).)

DISCUSSION

The Sixth Amendment guarantees criminal defendants "the right to a speedy . . . trial." The right attaches upon either a formal indictment or information or where "the actual restraints imposed by arrest and holding to answer a criminal charge." United States

4

v. Marion, 404 U.S. 307, 320 (1971).  Whether an accused's right to a speedy trial has been

violated is a fact-specific inquiry, which "necessarily compels courts to approach speedy trial

cases on an ad hoc basis." Barker v. Wingo, 407 U.S. 514, 530 (1972).  In Barker, the Supreme

Court identified four factors relevant to a claim under the Speedy Trial Clause: (1) the length of

the delay, (2) the reason for the delay, (3) the defendant's demand for a speedy trial, and (4)

prejudice to the defendant.  Id. at 530.  No single factor is dispositive to the finding of a speedy

trial violation, however, and "courts must still engage in a difficult and sensitive balancing

process." Id. at 533.

   1.   Length of Delay

          With respect to the first factor—the length of the delay—the Supreme Court has

explained that it entails a "double enquiry." Doggett v. United States, 505 U.S. 647, 651-52

(1992).  "[T]o trigger a speedy trial analysis, an accused must allege that the interval between

accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial'

delay." Id.  If the delay crosses the threshold of ordinary delay, "the court must then consider, as

one factor among several, the extent to which the delay stretches beyond the bare minimum

needed to trigger judicial examination of the claim." Id. at 652.

          Here, the parties agree that the relevant period of delay is measured from the date

of the indictment, November 19, 2009, to the government's formal request to extradite Cavan,

September 14, 2012.[1]  (April 22, 2016 Hearing Tr. 2-3.)  The Court finds that the delay, which

amounts to approximately 34 months, is longer than ordinary delay, and warrants consideration

of the other Barker factors.  As to the second part of the enquiry, the Court concludes that a delay

---

[1] Cavan concedes that "he bears more responsibility than the Government for the delay following the government's formal extradition request in 2012." (Def.'s Reply Br. 2.)  The Second Circuit also observed that pretrial delay after a formal indictment caused by defendant "does not constitute part of the period of 'delay' for the purposes of evaluating his claim under the Speedy Trial Clause." United States v. Ghailani, 733 F.3d 29, 44 n.14 (2d Cir. 2013).

of 34 months weighs in favor of Cavan.  However, the Court also notes that the delay "while lengthy, is nevertheless considerably shorter than those in other cases where we have found no speedy trial violation."  Flowers v. Warden, Connecticut Corr. Inst., Somers, 853 F.2d 131, 133 (2d Cir. 1988) (citing cases with delays ranging from 21 months to 6 years in which no speedy trial violation was found).

2.  Reason for Delay

As for the second factor, courts have recognized that the reason for delay "is often critical" in the analysis.  United States v. Moreno, 789 F.3d 72, 79 (2d Cir. 2015).  Delay attributable to the defendant or to a legitimate governmental purpose will rarely implicate the Sixth Amendment, whereas intentional governmental conduct aimed at gaining a trial advantage weighs in favor of finding a violation.  Doggett, 505 U.S. at 656.  Even where there is no evidence of bad faith, though, "negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."  Barker, 407 U.S. at 531.  But governmental negligence "does not weigh in favor of the defendant unless it actually lengthened the delay."  Moreno, 789 F.3d at 80.  "[N]egligence is not a '*reason* for the delay,' unless there is a causal connection."  Id. (quoting Barker, 407 U.S. at 530).  While the government is required to exercise diligence in pursuing an accused defendant and bring him the trial, it need not exercise diligence if diligence would have been futile.  United States v. Blanco, 861 F.2d 773, 778 (2d Cir. 1988).

There is no evidence that the government delayed Cavan's extradition intentionally "to gain some impermissible advantage at trial."  Doggett, 505 U.S. at 656.  While the government sought the cooperation of Cavan's codefendants to buoy its case for Cavan's

6

extradition, there is no evidence that this was done maliciously or to thwart Cavan's defense. Courts have recognized that negotiating plea deals against an accused's codefendants is part of the normal course of prosecutions and may justify government delay.  United States v. Vassell, 970 F.2d 1162, 1165 (2d Cir. 1992) (holding that the government's delay was reasonable where they needed time to negotiate a guilty plea with a codefendant).  Just like negotiating a plea agreement with an accused's codefendants could result in favorable "testimony against the accused," so too could have the government's negotiations with Cavan's codefendants led to helpful information in drafting Cavan's extradition request.  Even though the government failed in its attempt, "[a]n investigation is not unreasonable simply because it misfires or fails of its purpose, or because other measures would have been more fruitful."  Moreno, 789 F.3d at 79. Accordingly, the Court concludes that from the date of the indictment until June 2010, the government was justified in delaying extradition while attempting to obtain information from Cavan's codefendants to strengthen its case for Cavan's extradition.

       The government's reasons for delaying Cavan's extradition from July 2010 to September 2012 are less compelling.  Although the government contends that it was drafting Cavan's extradition request in conjunction with the OIA between July 2010 and November 2011 (OIA Letter at 2), it fails to adequately explain why the drafting process took more than a year to complete.  United States v. Alexander, 817 F.3d 1178, 1182-83 (9th Cir. 2016) (holding that a 9.6 month delay in requesting extradition was attributable to government negligence, because the government failed to explain the reason for the inordinate amount of time it took in drafting the request).  To explain the delay, the government only offered the OIA Letter addressed to the International Assistance Group, which explained—in vague terms—that the OIA and AUSA needed "to determine whether the Canadian conviction was based on the same conduct that

comprised the U.S. charges," and to "perfect[] the identification portion of the request." (OIA Letter at 2.)  The government has not offered any further explanation, such as the number of drafts that were exchanged, the complexity of the issues, or whether the AUSA approached the drafting process efficiently.  Alexander, 817 F.3d at 1183 ("[I]t seems that the prosecutor did not use the entire remaining time to draft the request efficiently.").  The OIA Letter itself also suggests that at least part of the reason for the delay was the fact that the AUSA "assigned to the matter was handling numerous other matters."  (OIA Letter at 2.)  Under the circumstances, the Court cannot conclude that the government was diligent in its efforts to secure Cavan's extradition during the period July 2010 to November 2011; rather, the delay is attributable to the government's own workload or negligence.

Similarly, the government fails to sufficiently explain its delay in seeking Cavan's extradition for the subsequent 11 month period from November 2011 until Cavan's formal extradition request on September 14, 2012.  The government again relies entirely on the OIA Letter, which explains that the delay was necessary because the OIA, upon discovering that an AUSA from the Western District of New York was independently drafting an extradition request for Cavan's codefendant, "decided to hold the Cavan request so the two related requests could be considered together."  (Id. at 3.)  However, the government does not explain why it was necessary to consider the two requests together, and if it was necessary, why the drafting process carried on for an additional 11 months before completion.

While the 27-month period from July 2010 to September 2012 cannot be blamed on intentional governmental conduct, the government's failure to take reasonable steps in securing Cavan's extradition during this time period likely constituted negligence.  Such negligence, however, only weighs against the government if it causes the delay.  Moreno, 789

8

F.3d at 80.  Here, the record demonstrates that the government's negligence was not the reason

for the delay in Cavan's extradition, and that an earlier extradition request by the government

would likely have been futile.

An earlier made extradition request would likely have been futile because

Cavan's parole was suspended shortly after he was indicted in the present case, and he was not

eligible for statutory release until September 5, 2013, and his sentence did not expire until July

27, 2015.  (Surrender Decision at 6.)  Because Cavan was required to serve out the remainder of

his Canadian sentence prior to being extradited under section 64 of the Extradition Act, an earlier

extradition request would not have resulted in Cavan's extradition until September 2013 at the

earliest.

Cavan argues that the government is to blame for the suspension of his parole.  He

contends that his parole was suspended "based solely on the information provided by the

Government to Canadian authorities."  (Def.'s Br. 7.)  While it is true that the government

provided information to the Canadian authorities, it was the Canadian authorities that ultimately

determined that Cavan violated the terms of his parole.  As the Canadian Minister of Justice

noted, the suspension of Cavan's parole was entirely self-inflicted.  (Surrender Decision at 5-6

("[T]he delay in seeking Mr. Cavan's extradition did not bring about the parole suspension; it

was Mr. Cavan's alleged conduct itself.").)

Cavan also argues that the Minister of Justice could have ordered his earlier

release if the government had requested it.  Under the Extradition Act, the Canadian Minister of

Justice does have discretion to release a prisoner prior to the completion of his prison sentence.

Canadian Extradition Act, S.C. 1999, c.18, section 64.  The record, however, undermines any

claim that Cavan's earlier release had any realistic chance of success.  In his written opinion in

Cavan's surrender proceeding, Minister MacKay addressed this very point. He stated that "[i]n the circumstances, it is not apparent that an earlier request for extradition would have resulted in Mr. Cavan's earlier release from custody." (Surrender Decision at 6.) In light of this statement by the Minister of Justice—the same person who would have ruled on an earlier request for extradition—it is unlikely that an earlier request for extradition would have been granted. In its supplemental submission, the government also proffered that the OIA contacted the Canadian authorities, who stated that "where, as here, the conduct underlying Cavan's Canadian parole violation was substantially the same as the conduct for which his extradition was sought, there was no basis" for the Canadian Minister to order an earlier release. (Dkt. No. 79, at 2.) Based on Minister MacKay's conclusion and the government's supplemental proffer, an earlier request for extradition would not have resulted in Cavan's earlier release.

Cavan also suggested that Canadian authorities had no real motive to continue to detain him and would have willingly returned him to U.S. authorities if those authorities had only made an earlier request. But Canadian authorities have a strong interest in ensuring the integrity of foreign-imposed sentences on Canadian citizens who are transferred to Canadian custody pursuant to the International Transfer of Offenders Act S.C. 2004, c. 21. Transfer of a Canadian citizen to Canada to serve a sentence requires the consent of the foreign government, which consent may be withdrawn only prior to the transfer. Id. at § 8.1. Thus, Canada's reputation and ability to obtain foreign government consent rests on properly monitoring parolees serving foreign-imposed sentences, which was very much at stake in the present case. Moreover, even though Cavan's violation of his Canadian parole was a narcotics trafficking offense committed in the United States, the indictment alleges that Cavan's co-conspirator possessed $459,000 for the drug transaction and another co-conspirator obtained a sample of the

cocaine to be purchased.  (Indictment ¶ 4(b), (e).)  Based on Cavan's residency in Canada and the large amount of cocaine to be purchased, Canadian authorities would have reason to fear that a significant portion of the to-be-purchased cocaine would end up in Canada.   It is worth noting again, that apprised of the indictment and Canadian public policy—and after giving Cavan an opportunity to be heard, Minister MacKay wrote in his Surrender Decision that "[i]n the circumstances, it is not apparent that an earlier request for extradition would have resulted in Mr. Cavan's earlier release from custody."  (Surrender Decision at 6.)

Under the circumstances, the Court concludes that the second <u>Barker</u> factor does not weigh in favor of either party.  The government's delay in seeking Cavan's extradition was not intentional.  And while part of the government's delay may be attributable to negligence, such negligence does not weigh in favor of the defendant since it did not cause the delay in his extradition.

3.   <u>Demand for a Speedy Trial</u>

As for the third factor, Cavan never asserted his right to a speedy trial until he brought the present motion in February 2016, even though he was aware of the indictment as of November 26, 2009.  (Cavan Decl. ¶¶ 11-12.)  In <u>Doggett</u>, the Court observed that if a defendant knew "of his indictment years before he was arrested . . . <u>Barker</u>'s third factor . . . would be weighed heavily against [the defendant]."  <u>Doggett</u>, 505 U.S. at 653; <u>see</u> <u>also</u> <u>Barker</u>, 407 U.S. at 534 ("More important than the absence of serious prejudice, is the fact that Barker did not want a speedy trial.").

While Cavan asserts that he did nothing during the 34-month delay "to frustrate the government's attempts to bring him to trial" (Def.'s Br. 7), Cavan's actions in the subsequent two years demonstrate a "lack of serious interest in a speedy prosecution of the charges against

11

him." Rayborn v. Scully, 858 F.2d 84, 89 (2d Cir. 1988).  Rather than consenting to his

extradition, Cavan contested his extradition for more than two years.  Where, as here, "it is

manifestly apparent that a defendant has no serious interest in the speedy prosecution of the

charges against him, a court need not ignore the defendant's fugitivity or recalcitrance in

determining whether his sixth amendment rights have been violated."  Id. at 92; see also United

States v. Manning, 56 F.3d 1188, 1195 (9th Cir. 1995) (holding that a defendant's "affirmative

resistance of the government's efforts to secure his presence in the United States constitutes an

intentional relinquishment of his right to a constitutional speedy trial, and he cannot now

complain of the delay that he himself caused"); United States v. Mitchell, 957 F.2d 465, 469 (7th

Cir. 1992) (concluding that the third Barko factor weighs against a defendant where the

defendant "made no attempt to demand a trial, to waive extradition, or to otherwise seek to return

to the United States for trial").  Accordingly, the Court weighs the third Barker factor heavily in

favor of the government.

4.  Prejudice

Lastly, the Court concludes that Cavan has failed to show that any actual

prejudice resulted from the delay.  The Supreme Court has recognized that "unreasonable delay

between formal accusation and trial threatens to produce more than one sort of harm, including

'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that

the [accused's] defense will be impaired' by dimming memories and loss of exculpatory

evidence."  Doggett, 505 U.S. at 654 (alteration in the original).

Cavan did not suffer "oppressive pretrial incarceration."  Although Cavan was

incarcerated in Canada during the delay, his imprisonment was not caused by the government's

delay in seeking extradition.  As discussed above, Cavan would have been imprisoned in Canada

12

regardless of when the government sought his extradition.  United States v. Lainez-Leiva, 129

F.3d 89, 92 (2d Cir. 1997) (holding that defendant could not "claim prejudice traceable to any

oppressive pretrial incarceration, because he would have been serving his state sentence in any

event").  Nor has Cavan alleged that he suffered anxiety or concern from the indictment.  Indeed,

Cavan's own attempts to thwart extradition for two years suggest that he "was not subject to the

anxiety or humiliation that typically accompanies a known criminal charge."  Doggett, 505 U.S.

at 660.

Cavan has also failed to demonstrate that the delay caused actual prejudice to his

defense.  Id. at 654 (holding that impairment of one's defense is the most serious of prejudices

that a party can suffer from delay).  In support of his claim of actual prejudice, Cavan contends

that the 34-month delay eroded his "memory of the calls, communications, the circumstances

under which they occurred, the parties who participated in them, and their precise subjects."

(Def.'s Br. 9.)  However, a more particularized showing of prejudice is typically required.

Moreno, 789 F.3d at 81 ("Moreno suggests—with no evidentiary support—that he suffered trial

prejudice because he may no longer remember certain phone conversations . . . .  That conjecture

is insufficient for a particularized showing of prejudice in this case.").  Here, Cavan offers no

evidence, affidavit or otherwise, tending to show that his defense suffered prejudice as a result of

the delay.  Cavan has not identified any witnesses, any specific phone calls or communications,

or other exculpatory evidence that would have aided his case, but is no longer available because

of the governmental delay.  United States v. Loud Hawk, 474 U.S. 302, 315 (1986) (holding that

the mere "possibility of prejudice is not sufficient to support [defendant's] position that [his]

speedy trial rights were violated").  Indeed, Cavan notes in his moving papers that the

government provided recordings for some phone calls relevant to the case.  (Def.'s Br. 9.)

13

Furthermore, because the government bears the burden of proof when the case comes to trial, "[d]elay does not per se prejudice the accused's ability to defend himself." Moreno, 789 F.3d at 81. "[D]elay is a two-edged sword. . . .  The passage of time may make it difficult or impossible for the Government to carry [its] burden." Loud Hawk, 474 U.S. at 315.

Nor can Cavan rely solely on presumed prejudice stemming from the delay.  The Supreme Court has noted that "affirmative proof of particularized prejudice is not essential to every speedy trial claim." Doggett, 505 U.S. at 655.  "While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay." Id. at 655-56 (internal citations omitted).  This is not one of those "exceedingly rare instances" in which the delay supports a presumption of prejudice. Moreno, 789 F.3d at 82.  While the length of delay is sufficiently long to pass the threshold of ordinary delay, it is not so long to "relieve[] the defendant of the burden of affirmatively showing prejudice." Id. at 82 n.10; Rayborn, 858 F.2d at 94 ("[C]ourts generally have been reluctant to find a speedy trial violation in the absence of genuine prejudice.").  In addition, presumptive prejudice is inappropriate in light of the other Barker factors, which do not weigh in defendant's favor. Doggett, 505 U.S. at 656.

BALANCING THE BARKER FACTORS

The 34-month delay between Cavan's indictment and the government's request for extradition, while lengthy, is not so lengthy to be dispositive. Flowers, 853 F.2d at 133. Furthermore, at least part of that 34-month delay was reasonable under the circumstances, as the government sought additional information from Cavan's codefendants to help secure Cavan's extradition. Ghailani, 733 F.3d at 47 (citing cases which "permitted the government purposely to

delay trials for significant periods of time, so long as, on balance, the public and private interests rendered the delay reasonable").

The delay attributable to the government in the present case, therefore, amounts to 27 months.  Although the government was negligent in failing to take reasonable steps in securing Cavan's extradition during this period, such negligence did not cause the delay of Cavan's extradition.  Moreno, 789 F.3d at 80 ("[N]egligence is not a '*reason* for the delay,' unless there is a causal connection.").  The record shows that Cavan would have been imprisoned in Canada until at least September 2013.  Furthermore, Cavan's disregard for his own speedy trial right by contesting extradition for an additional two years, despite knowing of the indictment, weighs in favor of dismissal.  Doggett, 505 U.S. at 653.

Critically, Cavan has wholly failed to prove any particularized prejudice.  Even if the government's negligence caused the 27-month delay, Cavan's failure to show that the delay resulted in any prejudice to his ability to mount a defense at trial weighs heavily against him. Rayborn, 858 F.2d at 92 ("[State's] negligence and lack of diligence alone would not mandate dismissal of [defendant's] murder conviction.").  And while actual prejudice is not a prerequisite for relief, "evidence of actual prejudice is quite important unless the other factors weigh heavily against the government." United States v. Ghailani, 751 F. Supp. 2d 515, 541 (S.D.N.Y. 2010) (citing Rayborn, 858 F.2d at 94), aff'd, 733 F.3d 29 (2d Cir. 2013).

Considering all the facts and circumstances of the present case, the Court concludes that Cavan was not deprived of his right to a speedy trial.

CONCLUSION

For the foregoing reasons, Cavan's motion to dismiss the indictment (Dkt. No. 63) is DENIED.

15

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       July 28, 2016