```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                              09 CR 1120 (PKC)

HAN CAVAN,

                 Defendant.

------------------------------x
                                            New York, N.Y.
                                            July 8, 2016
                                            11:30 a.m.


Before:

                    HON. P. KEVIN CASTEL,

                                            District Judge


                         APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
EDWARD IMPERATORE
     Assistant United States Attorney

ARNOLD LEVINE
     Attorney for Defendant
```

1           (Case called)

2           THE COURT:  Good morning.

3           Just to set the stage, this is a continuation of the
4  argument on defendant's motion to dismiss the indictment for a
5  violation of the constitutional speedy trial protection in that
6  there was a gap of 34 months from the date of the indictment,
7  November 19, 2009, and the date on which the U.S. government
8  sought extradition of the defendant from Canadian authorities
9  on September 14, 2012.

10          I gave the parties an opportunity to examine further
11 what there was in the record regarding the actions of the
12 Canadian authorities.  And, while I had information before me
13 regarding the surrender decision of the Canadian minister of
14 justice, I now have the full text of Minister Peter McKay's
15 determination, and I have the benefit of a letter submission
16 from the government.

17          I wanted to give Mr. Levine an opportunity to respond
18 to that and also to bring to my attention anything else that he
19 believes I should consider in deciding this motion.

20          MR. LEVINE:  Yes, your Honor.  I think I will be
21 relatively brief in responding to the government's letter.
22 Some of this has already been said, either in writing or at the
23 previous argument.  Since the government rehashed some of it, I
24 think, if you would indulge me, I will rehash again.

25          As to the government's first point, the government

acknowledges that the minister of justice had the discretion to order the release of Mr. Cavan to the United States pursuant to an extradition request, if he so chose, although the government then continues to sort of ignore that clause and the minister's own decision and goes on to say that the Canadian authorities could not release him before the expiration of his sentence.

Again, that last part is just not true. They did not have to wait until the end of his sentence to release him. The minister of justice had the authority and had the discretion to release him before that.

Now, the documents that your Honor has, in terms of the minister of justice's decisions -- those are in response to after an extradition request was finally made after the 34 months and then after Mr. Cavan's lawyer then was fighting the extradition in large part based on that delay of 34 months.

And then it was in response to Mr. Cavan's lawyer's arguments that the minister of justice and the Canadian authorities then inquired of the U.S. government what took so long, and then the U.S. government, in hindsight, tried to explain what took so long.

There was no documentation from the first time the government made the request to Canada that Canada said, you have to give us more proof of the charges before we'll honor this request or even consider the request. No such request was ever made by the Canadian authorities or required by the

1   Canadian authorities.

2   The Canadian authorities, when they asked more
3   information about the delay, they were acting so they could
4   respond to Mr. Cavan's motions on appeal trying to fight the
5   extradition after that 34 months.

6   So at that point, the minister of justice acknowledges
7   he had the discretion, but he never says he would not have
8   exercised it.  That's notable, that he never says he would
9   never have exercised it.  What we know is that the U.S.
10  government never asked him to exercise it.

11  THE COURT:  Let's take a look at what he did say.  On
12  page 6, "With respect to persons sought, serving sentences in
13  Canada, I note that Section 64 of the Act provides that unless
14  I order otherwise," because parenthetically, this is the
15  decision of the Honorable Peter McKay to make as the minister
16  of justice.  This is the Honorable Peter McKay ruling on the
17  extradition application relevant to Mr. Cavan.

18  He says, "Unless I order otherwise, the surrender
19  order does not take effect until after the person has been
20  discharged, whether by expiry of the sentence or otherwise.
21  Your materials," he states, "indicate that Mr. Cavan was not
22  eligible for statutory release until September 5, 2013, and
23  that his sentence does not expire until July 27, 2015.

24  "In the circumstances, it is not apparent that an
25  earlier request for extradition would have resulted in

1   Mr. Cavan's earlier release from custody in relation to the
2   sentence he is currently serving in Canada."  That's the end of
3   the quote on page 6.
4            Now, that is not the statement of an observer.  That's
5   a statement of the individual who held the discretion to have
6   terminated the Canadian sentence and ordered otherwise.
7            He says, based on his review of the materials before
8   him, that it is not apparent that an earlier request would have
9   resulted in an earlier release.
10           Why isn't that adequate?
11           MR. LEVINE:  Because he doesn't say, certainly, that
12  it would not have.  He does not make a definitive statement,
13  number one.
14           Number two, as I said, in hindsight, this is them
15  talking about whether extradition should be granted at this
16  later point in time when it was being fought.
17           This wasn't something he was saying immediately upon
18  an extradition request and a fight at that point about whether
19  to grant extradition or not grant extradition at an earlier
20  point.
21           THE COURT:  Let's take a situation which is maybe
22  counterfactual.  Let's assume that Section 64 of the Act did
23  not have the language, "Unless the minister orders otherwise"
24  in it.  Let's assume that wasn't in there.  Let's assume that a
25  Canadian official, perhaps the royal governor, prime minister,

1  has a pardon authority.

2             Couldn't you make the same identical argument here
3  that, well, the sentence could have ended earlier?  He could
4  have been pardoned.

5             MR. LEVINE:  Well, I think that it could be made, but
6  more importantly, I think that that takes it to another
7  extreme.  The whole point is that this isn't a statute.  This
8  is the prime minister's authority.  There's nothing left to
9  hypothetical or to speculation.

10            THE COURT:  Presumably pardon power is set forth in a
11  foundational document, whether it's a statute or a
12  constitutional document of some sort.  So assume that there is
13  a pardon power.  You would have the same argument, that he
14  could have been pardoned and, therefore, it could have ended
15  earlier.

16            MR. LEVINE:  Except that in that situation, it also
17  depends on what the track record is and how often pardons are
18  granted, if ever, for those purposes by Canadian authorities
19  and what information the United States government had about
20  that.

21            Did the United States government ever ask Canadian
22  ministers or a prime minister to pardon anybody for extradition
23  purposes?  Has anybody ever done that?  Has a Canadian
24  prime minister ever done that?

25            The burden is on the government to prove by

1  substantial evidence that it would have been futile, not that
2  it could have been futile but that it would have been futile,
3  and that's a significant distinction.
4          Having never asked in this case for the minister of
5  justice to exercise that discretion, the government is in no
6  position to say that it would not have been exercised.
7          All they can point to is something in hindsight that's
8  based on a different legal argument that has nothing to do with
9  the actual issue.
10         That's dealing with certainly a much different legal
11 issue under Canadian law about whether extradition should be
12 granted or whether he has a legal grounds to fight it three
13 years later based on the delay, and that's looking backwards.
14         It has nothing to do with whether the government had
15 asked in 2009 and said, look.  Mr. Cavan is serving a
16 United States sentence, not a Canadian sentence, a
17 United States sentence for a United States crime in your jail
18 because we transferred him to you, and now we want him back for
19 another United States crime.  We would like him back.  Whose
20 interests really are paramount there?
21         The Canadian authorities later on explicitly said,
22 even when extraditing him for this even on the new case, the
23 U.S. government's interests were paramount to theirs even
24 though the charge was that he was trying to bring drugs into
25 Canada.

1    But, given that he was serving a United States
2    sentence, not a Canadian sentence, for a United States crime,
3    not a Canadian crime, and that he was in on a parole violation
4    based on another United States crime and they only knew about
5    that because the United States DEA or other authorities had
6    in fact informed them explicitly of it after the felony
7    indictment rather than just asking for extradition, there's
8    every reason to believe that if all those things had been
9    presented in a timely manner, looking at it forwardly instead
10   of backwardly, that the minister of justice would have said,
11   you know, the United States has a good point here.  Their
12   interests are paramount to ours.  We don't really have a horse
13   in this race.  This is between Mr. Cavan and the United States.
14   The past crime is, the sentence he's serving is, and the new
15   case is.  So this makes this a rather extraordinary case.
16            THE COURT:  Let me ask this of you.  I hear your
17   argument loud and clear.  Let me ask you:  If I understood what
18   you said a moment ago, you acknowledge that the failure to ask
19   for an earlier release and that request having been denied does
20   not doom the government's position in this case if they can
21   show that it would have been futile to do so?  Is that your
22   position?
23            MR. LEVINE:  Judge, I think it's a strength to take
24   that position based on Second Circuit case law.  For purposes
25   of preserving the argument for any higher court, my argument is

1  that without actually asking and making the effort, that is not
2  sufficient.
3          But I understand there's Second Circuit case law in I
4  think it's People v. Blanco in which the issue is Columbia.
5  There's another case dealing with Greece where there's a track
6  record, and they know what the relationships are between the
7  countries and that, for example, either Columbia or Mexico has
8  a policy not to extradite people to the United States on drug
9  crimes or capital crimes or things like that; that there's such
10 a track record and the other country has made it so clear that
11 they will not comply that that satisfies their burden of
12 showing substantial evidence that it would be futile.
13         Here they haven't shown anywhere near that.  They
14 haven't shown anything like that.  I would also point out that
15 in the government's letter at the bottom of page 1 going into
16 the top of page 2, the government talks about a conversation
17 that somebody had with somebody in Canada, some Canadian
18 authorities that are really unspecified.
19         They didn't get an affidavit from anybody in Canada.
20 They don't really lay out all the details of it.  I don't know
21 what the Canadian authorities were told about Mr. Cavan's
22 particular circumstances such as that the parole violation he
23 was serving for at that time in Canada was for an American
24 crime on an American sentence, an American-imposed sentence, as
25 opposed to a Canadian crime on a Canadian sentence where it was

1  their laws that were violated and they had an interest in
2  seeing that he serve out that full sentence.  So I don't know
3  whether that was conveyed to them in getting this opinion.
4          As I said, I don't know who gave the opinion.  It
5  certainly is not under oath.  There are no real details.
6  There's no law.  There's no Canadian statute or law that's
7  cited for the proposition, and it contradicts what the minister
8  of justice himself said during the extradition proceedings.
9          THE COURT:  How does it contradict him?
10         MR. LEVINE:  Because this says that Canadian
11 authorities -- this is the government's letter at page 2 --
12 "Canadian authorities have further represented that where, as
13 here, the conduct underlying Cavan's Canadian parole violation
14 was substantially the same as the conduct for which his
15 extradition was sought.  There was no basis for such an order,"
16 referring to an order by the minister of justice to release him
17 early.
18         The minister of justice never cites anything like
19 that.  The minister of justice says, I have the authority to do
20 it.  He never cited anything like that.  He never said, I
21 wouldn't do it because it's the same conduct.
22         That doesn't really make sense that they wouldn't do
23 it because it's based on the same conduct.  Logic would dictate
24 otherwise actually, considering especially his circumstances.
25         As I said, that it was an American sentence on an

1   American crime that he was serving there and that the conduct
2   that gave rise to the parole violation was an indictment in the
3   United States as well.
4            So it contradicts him.  There's no source for it.
5   It's not under oath.  I think basically that that sentence
6   should really be ignored by the Court.  It should carry no
7   weight whatsoever.  It certainly doesn't rise to the level of
8   substantial evidence.
9            THE COURT:  Thank you, Mr. Levine.  Let me give
10  Mr. Imperatore an opportunity to respond.
11           MR. IMPERATORE:  Yes, your Honor.  Our positions are
12  set forth in our submissions.  I just want to briefly just tie
13  this back to what the standard is here.
14           It's not the government's burden to show by
15  substantial evidence that an extradition request was futile.
16  It's the defendant's burden to show, under Barker v. Wingo that
17  the four Barker factors on balance weigh in favor of a
18  conclusion that speedy trial rights were infringed.  Against
19  this backdrop, your Honor, it's not a close question.  All of
20  the operative factors favor the government.
21           I think really -- and the Court honed in on this --
22  the dispositive factors really are, number one, that both the
23  minister and the Canadian Court of Appeal recognized that the
24  surrender order does not take it into effect until the
25  expiration of the parole sentence.

1            Second, the minister really appreciated his
2    discretion.  He was the guy who it was up to to make the
3    decision.  He acknowledged his discretion.
4            I also think it's worth noting that Mr. Cavan never
5    challenged his parole violation.  He had the ability to do that
6    in Canada.  He never once sought review of that.
7            THE COURT:  Why is that relevant?
8            MR. IMPERATORE:  I think it's relevant, your Honor,
9    because, to the extent there's a claim here that he was
10   incarcerated because of the delay and that -- well, it's
11   relevant to the extent that if the claim is, well, the
12   government should have sought his extradition sooner, Mr. Cavan
13   could have challenged his parole and presumably moved the
14   minister or someone else to the conclusion that he should have
15   been released earlier, and, in that case, perhaps his
16   extradition would have been expedited.
17           He had the ability to do that.  He didn't take that
18   step.  I think it's obvious why.  He then spent nearly two
19   years after the surrender decision challenging the minister's
20   order so that he would not have to face charges here in the
21   Southern District of New York.
22           Finally, with respect to the claim that this was an
23   American sentence on an American crime, the record reflects
24   just the opposite.  I think what the minister and the Canadian
25   Court of Appeal state in their opinion is that this parole

violation was an entirely separate offense that had two separate grounds: Number one, his committing another crime; and second, his association with drug dealers.

Second, putting aside the fact that the United States did supply information to Canadian authorities, it wasn't any delay or action or inaction on the part of the United States that led to his extradition. It was the fact of this parole violation.

So, for those reasons, your Honor, we submit that this is not a close question and that the Court should deny the motion.

THE COURT: What should I make of your claimed opinion from a Canadian source as to what would have happened?

MR. IMPERATORE: Well, your Honor, I think what the government endeavored to do in its letter was to address questions that your Honor had asked at the last conference, and one of the questions that was asked related to this particular issue.

I think it's not a dispositive point. I don't think the Court needs to make a finding on this in order to deny the motion. I think the dispositive points are the ones that I just articulated.

But I think the takeaway here is that it made sense that the minister did not order otherwise and did not order the defendant's release before the expiration of his parole

1  sentence.

2  The reason for that is there are significant Canadian
3  interests at stake here too, and it made sense that he would be
4  detained in Canada for serious parole violations on the very
5  same facts for which his extradition was sought.

6  THE COURT:  Mr. Levine, I'll give you the last word.

7  MR. LEVINE:  Thank you, Judge.  Mr. Cavan was being
8  held on parole violations.  That's not the same as the federal
9  system supervised release and things like that.  There's no
10 separate offense.

11 It was sent back to continue serving the sentence that
12 had been previously imposed by the American court in
13 Minneapolis, and he had been released early on early parole in
14 Canada, actually much earlier than he would have been in the
15 United States.

16 And then, when the United States informed Canada of
17 the indictment instead of just requesting extradition and just
18 gave them this information and said, we have an indictment and
19 this is what he did, they violated him on that parole and then
20 had him go back to jail to fulfill and continue serving the
21 sentence that had been previously imposed.

22 There was no new sentence.  There was no new crime.
23 There was no new indictment in Canada.  There was no trial in
24 Canada.  There was not a new sentence to be served, a Canadian
25 sentence.  It was still the American sentence that was being

1  served that had to be continued because he had been released
2  early.
3        THE COURT:  It's akin to a situation with supervised
4  release in that it's a separate violation of trust.  The
5  Canadian authorities trusted him and released him on parole and
6  found that their trust was violated in doing so.  And,
7  therefore, they ordered him returned to prison because of that
8  violation of trust on a uniquely Canadian feature of the
9  sentence, parole, something that would not exist here under the
10 federal system.
11       MR. LEVINE:  But the fact is that the sentence he
12 continued to serve was still the American sentence, not a new
13 Canadian sentence.
14       THE COURT:  Correct.  Do we have another date to get
15 together in this case?
16       MR. LEVINE:  Not yet.
17       THE COURT:  This is what I propose to do:  I'm going
18 to issue a written ruling, and I expect to do it by the end of
19 this month.  I suggest that provisionally we set another date
20 in this case.  If it becomes unnecessary, so be it.  If it
21 becomes necessary, we will have the date already established.
22       Would it be convenient to gather on August 30 at 3:00
23 p.m.?
24       MR. LEVINE:  That works for me, Judge.
25       THE COURT:  Mr. Imperatore?

1    MR. IMPERATORE:  That's fine with the government,
2 your Honor.
3    THE COURT:  Let me set the next conference for
4 August 30 at 3:00 p.m. provisionally.  Mr. Imperatore, do you
5 have an application?
6    MR. IMPERATORE:  Yes, your Honor.  The government
7 moves to exclude time pursuant to the Speedy Trial Act in the
8 interests of justice from today until August 30.
9    Such an exclusion of time would allow the defendant to
10 continue to review the discovery the government has produced
11 and to explore any potential disposition of the case.
12    THE COURT:  Mr. Levine?
13    MR. LEVINE:  I'll consent to that at this time, Judge.
14    THE COURT:  All right.  I find that the ends of
15 justice will be served by granting a continuance to August 30
16 and that the need for a continuance outweighs the best
17 interests of the public and the defendant and a speedy trial.
18    The reasons for my finding are that the time is
19 needed, first of all, for the Court to consider the arguments
20 here presented today and to prepare a written decision and,
21 thereafter, for the parties to assess the consequences of that
22 decision and decide on next steps in the case, which, if the
23 case goes forward, will be decided at the August 30 conference.
24 Accordingly, the time between today and August 30 is excluded
25 under the Speedy Trial Act.

1                  Is there anything further from the government?
2                  MR. IMPERATORE:  Not from the government, your Honor.
3                  THE COURT:  From the defendant?
4                  MR. LEVINE:  No, your Honor.
5                  THE COURT:  Thank you all very much.
6                  (Adjourned)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25