**ARNOLD J. LEVINE**
ATTORNEY-AT-LAW

THE WOOLWORTH BUILDING
233 BROADWAY STREET, SUITE 901
NEW YORK, NY 10279
Telephone: (212) 732-5800
E-mail: NYCcrimlaw@aol.com

February 15, 2017

**VIA ECF**
The Honorable P. Kevin Castel
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10013

        Re:    <u>United States of America v. Han Cavan</u>
                09-cr-1120-03 (PKC)

Your Honor:

      The defendant in the above-referenced matter, Han Cavan, is to be sentenced before Your Honor at 11:00 a.m. on February 28, 2017. For the reasons set forth in this Pre-Sentence Memorandum, the defense respectfully requests that Your Honor impose a sentence of five years, to be followed by an appropriate term of supervised release with such conditions as Your Honor deems necessary, and not impose a fine, in accordance with 18 U.S.C. § 3553(a).

**U.S.S.G. Calculation**

      Mr. Cavan pleaded guilty before Your Honor on October 4, 2016, to conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine, pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 846. This crime carries a five year mandatory minimum prison term.

      The parties agree that the base offense level should be based initially on the range applicable to at least fifteen, but less than fifty, kilograms of cocaine, which is 32. <u>See</u> U.S.S.G. §2D1.1(c)(4). The plea agreement entered into by the parties stipulates that the three-level enhancement provided for by U.S.S.G. §3B1.1(b), as Mr. Cavan qualified as a manager or supervisor, is appropriate. Finally, the parties and Probation further agree that Mr. Cavan timely notified the Government of his intention to plead guilty and that he did plead guilty. Accordingly, the parties and Probation

agree that Mr. Cavan is entitled to a three-level reduction under U.S.S.G. §§3E1.1(a), (b) for acceptance of responsibility.

Guidelines Calculation

Initial base offense level under §2D1.1(c)(4)..................................................................32

Three-level enhancement in the base offense level under §3B1.1(b)..............................+3

Three-level Acceptance of Responsibility reduction under 3E1.1...................................-3

Total Adjusted Offense Level.......................................................................................... 32

Accordingly, Mr. Cavan respectfully submits that his total adjusted U.S.S.G. offense level is 32.

Criminal History Calculation

      On February 28, 2006, Mr. Cavan pleaded guilty in the United States District Court for the District of Minnesota to possessing with the intent to distribute MDMA, under 21 U.S.C. § 841(b)(1)(C), and on November 20, 2006, he was sentenced to 117 months' imprisonment........................................................................................................................3

      The crime to which Mr. Cavan pleaded guilty in this case was committed while Mr. Cavan was serving parole for the previously imposed sentence.....................................................2

      Consequently, Mr. Cavan has five criminal history points, which results in Criminal History Category III.

      As stipulated in the plea agreement, the Sentencing Guidelines, therefore, call for a sentence of 151-188 months.

**A Sentence of Five Years is a Reasonable and Appropriate Sentence**
**Under 18 U.S.C. § 3553(a)**

      Although Your Honor must consider the Guidelines in determining the appropriate sentence for Mr. Cavan, Mr. Cavan respectfully requests Your Honor to take into account the nature and circumstances of the offense as well as the history and circumstances of the defendant, pursuant to 18 U.S.C. § 3553(a)(1), while keeping in mind both, that the sentencing-guideline range is only one of numerous factors to be weighed and that the sentencing range suggested by the guidelines is *not* entitled to a presumption of reasonableness. See Gall v. United States, 552 U.S. 38, 50, 128 S. Ct. 586, 596-97 (2007); Rita v. United States, 551 U.S. 338, 351, 127 S. Ct. 2456, 2465 (2007). In fact, the Supreme Court has noted that there is less support for assuming the reasonableness of the

guidelines range in drug-trafficking cases than in non-drug-trafficking cases. This is because, although "[i]n the main, the [Sentencing] Commission developed Guidelines sentences using an empirical approach based on data about past sentencing practices, including 10,000 presentence investigation reports, . . . [t]he Commission did not use this empirical approach in developing the Guidelines sentences for drug-trafficking offenses." Kimbrough v. United States, 552 U.S. 85, 96, 128 S. Ct. 558, 567 (2007). Thus, the Court explained, whereas "in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve §3553(a)'s objectives,' the drug-trafficking guidelines "do not exemplify the Commission's exercise of its characteristic institutional role . . ., [as] the Commission looked to the mandatory minimum sentences set in the 1986 Act, and did not take account of 'empirical data and national experience.'" Id. at 109, 128 S. Ct. at 574-75 (quoting Rita, 551 U.S. at 350, 127 S. Ct. at 2465).

As Your Honor is well aware, the sentence imposed must reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. See 18 U.S.C. § 3553(a)(2). Moreover, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which [the Court] may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. §3661. Indeed, the Supreme Court has recognized "that '[h]ighly relevant–if not essential– to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.'" United States v. Pepper, 131 S. Ct. 1229, 1235 (2011) (quoting Williams v. New York, 337 U.S. 241, 246-47, 69 S. Ct. 1079 [1949]) (alterations in Pepper). Mr. Cavan respectfully submits that a sentence of five years reflects these considerations.

Mr. Cavan was born in war-torn Vientiane, the administrative capital of the Kingdom of Laos, in 1968, at a time when the North Vietnamese and the Communist Pathet Lao were overrunning the Royal Lao Army and other Laotian forces and imposing their communist will across the Kingdom of Laos. See https://en.wikipedia.org/wiki/Laotian_Civil_War. The North Vietnamese, United States, Thai, and South Vietnamese were involved in the fighting for control over the Laotian Panhandle. See https://en.wikipedia.org/wiki/Laotian_Civil_War. "The war had resulted in large number of refugees with a peak number of 378,800 internally displaced persons under government control in October 1973." Id. At only five years old, Mr. Cavan was among those refugees. When he was still only six years old, Mr. Cavan and his family made the treacherous journey across the Mekong River to Thailand, where they remained in a refugee camp until Mr. Cavan was ten or eleven years old.

In 1979, Mr. Cavan and his family were relocated to Canada, where they were sponsored by a Christian church group. Although they had escaped with their lives, life is far from easy for refugees brought up in a foreign country half way around the world, particularly one where relatively few look like you or speak your language. Indeed, it has been recognized that

> "[m]any refugees who arrive in Canada face issues of acculturation and barriers to labour market integration. They may initially face limited employment opportunities due to their lack of Canadian work experience and social networks. In addition to these hurdles, numerous refugees have no or insufficient knowledge of both official languages (and must consequently learn English or French) and are lacking occupational skills. They often have reception and settlement needs beyond those of other immigrant groups.

A Statistical Profile of Government-Assisted Refugees, Submitted to Citizenship and Immigration Canada by Social Research and Demonstration Corporation (May 1, 2002).

Likewise, the refugees "arrived in Canada with few possessions and many memories of their traumatic escape." See The Resettlement of Indochinese Refugees in Canada Looking Back after Twenty Years, http://ccrweb.ca/sites/ccrweb.ca/files/static-files/20thann.html. This study concluded that "[t]he most immediate challenge was language – many remember meeting their sponsors for the first time without being able to speak to one another. The way of life in Canada also presented challenges, such as shopping for food on a weekly instead of daily basis and enrolling children in the school system." Id. In fact, as noted in the pre-sentence report, Mr. Cavan did not learn English until he was fourteen years old and was bullied due to his Asian ethnicity. Mr. Cavan started drinking alcohol when he was only fifteen or sixteen years old.

Eventually, Mr. Cavan and his family moved to Kitchener, Ontario, Canada in 1999. While Kitchener has a Laotian community, its 1,530 Laotian Canadians make up only 0.7% of Kitchener's population. See Laotian Canadians, https://en.wikipedia.org/wiki/Laotian_Canadians. Soon after arriving in Kitchener, Mr. Cavan began smoking marijuana. He soon graduated to cocaine and then methamphetamine until he was incarcerated in 2006.

On February 28, 2006, Mr. Cavan pleaded guilty in the United States District Court for the District of Minnesota to the crime of possession with intent to distribute MDMA (Ecstasy). On November 20, 2006, a sentence of 117 months' imprisonment was imposed. Because Mr. Cavan was (and is) a Canadian citizen, on June 26, 2008, he was transferred to Canada pursuant to the bilateral treaty between the United States and Canada for the transfer of prisoners, to serve the remainder of his sentence.

Approximately six weeks following his transfer, Mr. Cavan was granted accelerated day parole, and on October 2, 2009, he was granted accelerated full parole. In November 2009, U.S. law enforcement notified Canadian authorities that Mr. Cavan had been indicted for the instant matter, which resulted in Mr. Cavan being arrested by the Canadian authorities when he reported as scheduled to his parole office on November 26, 2009. The sole reason for the parole violation resulting in Mr. Cavan's re-incarceration in Canada was the conduct for which he was indicted and convicted in this case. Mr. Cavan remained incarcerated in Canada until November 5, 2015, when he was extradited to the United States to face the charges in this case.

Although Mr. Cavan was technically still serving out his previously imposed sentence as a result of the parole violation when he was re-incarcerated, the fact is that, given that he was already at liberty on accelerated full parole, the conduct for which he is going to be sentenced in this case was the sole and exclusive reason he was sent back to prison in Canada. That is, Mr. Cavan effectively spent nearly six years in prison in Canada for the same conduct for which he will be sentenced here. Despite this fact, however, Mr. Cavan will not receive credit from BOP for any time served on his parole violation in Canada, because that time will be deemed as time served on the previously imposed sentence, even though it resulted from the exact same conduct as the sentence to be imposed here. We respectfully submit that Your Honor can, and should, take these nearly six years into account under 18 U.S.C. § 3553(a) when imposing sentence on Mr. Cavan. Indeed, in the plea agreement, the Government "agrees that the defendant's incarceration in Canada for a parole violation, prior to his extradition to the United States, based upon conduct charged in the Indictment is a relevant consideration pursuant to Title 18, United States Code, Section 3553(a)." See Plea Agreement at page 3, section C. If those 72 months are subtracted from the lower guideline range of 151 months, it would yield a sentence of 79 months.

As noted in the pre-sentence report, "the co-defendants in this case all received sentences of 76 months or less." See PSR at 18. On June 28, 2010, John Mahwinney received a sentence of 76 months' imprisonment. As noted in the pre-sentence report, Mr. Mahwinney was released from BOP custody and deported to Canada on September 13, 2013, nearly three and one-half years ago. Mr. Mahwinney's Supervised release even expired already, on September 12, 2016. Notably, as explained above, Mr. Cavan was incarcerated in Canada based on the same conduct during the entire period of Mahwinney's incarceration and Supervised Release, still remains incarcerated, and will be incarcerated for at least five more years. We respectfully submit that Mr. Mahwinney played at least as important a role as Mr. Cavan in the charged conspiracy. Mr. Mahwinney made trips to the United States for the purpose of purchasing the cocaine, he engaged in numerous telephone conversations and negotiations with the confidential informants, and he even arranged for other large transactions with the confidential informants that did not even involve Mr. Cavan.

Given the circumstances endured by Mr. Cavan as a child and young adult, given the need to avoid unwarranted sentencing disparities, and given that a sentence of five years in this case, when coupled with the nearly six years he served in Canada as a result of the exact same conduct, would mean that he would end up serving nearly eleven years (slightly less than twice the sentence Mahwinney received and nearly thrice as long as Mahwinney served), we respectfully submit that a sentence of five years' imprisonment in this case is sufficient but not greater than necessary to satisfy the goals of sentencing.

Accordingly, Mr. Cavan respectfully requests that Your Honor impose a sentence of five years' imprisonment, pursuant to 18 U.S.C. § 3553(a),

**Conclusion**

      Mr. Cavan respectfully requests that Your Honor impose a sentence of five years to be followed by an appropriate period of supervised release with such conditions as Your Honor deems necessary. As required by §3553, such a sentence is "sufficient, but not greater than necessary," to comply with the purposes set forth in §3553(a)(2).

      Respectfully submitted,

      /S/ Arnold J. Levine
      Arnold J. Levine (AL6819)
      *Attorney for Han Cavan*

c:    AU.S.A. Edward Imperatore